IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Robert A. Snead
and Kevin D. Darrah,  :

                                    :      Civil Action 2:12-cv-0739

          Plaintiffs

                                    :      Judge Sargus

  v.

                                    :      Magistrate Judge Abel

Gary C. Mohr, *et al.*,

                                      :

          Defendants

                                      :

**INITIAL SCREENING
REPORT AND RECOMMENDATION**

Plaintiffs Robert A. Snead and Kevin D. Darrah, inmates at the Madison Correctional Institution, bring this prisoner civil rights action under 42 U.S.C. §1983 alleging that they have been denied medical care. Snead further alleges that he has been subjected to unsafe transportation to and from outside medical care and that defendants have retaliated against him for exercising his first amendment right to file grievances. This matter is before the Magistrate Judge for a Report and Recommendation on initial screening of the complaint pursuant to 28 U.S.C. §1915A(a) and (b)[1] and 42 U.S.C.

---

[1]The full text of §1915A reads:

    (a) Screening.--The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

    (b) Grounds for Dismissal.--On review the court shall

§1997e(c) to identify cognizable claims, and to dismiss the complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The Magistrate Judge finds that plaintiffs Snead and Darrah have improperly joined their claims and, therefore, ORDERS that the Clerk of Court create two separate case files. Civil Action No. 2:12-cv-0739 shall continue as plaintiff Robert A. Snead's claims against defendants, and the Clerk of Court shall create a second case file for the claims of plaintiff Kevin D. Darrah. The Magistrate Judge further finds that the complaint fails to state a claim upon which relief may be granted against defendants Gary C. Mohr, Gary Croft, John DesMarais, Stuart Hudson, Robert Welch, Mona Parks, Rod B. Johnson, Jondrea Parrish, Ralph Wilson, Donald Root, Darhla Roberts, K. Layne, and D. McGonigal and, therefore, **RECOMMENDS** dismissal of those defendants. The Magistrate Judge further concludes that at the initial screening stage the complaint

---

identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

(c) Definition.--As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentence for, or adjudicated delinquent for, violations of criminal law or terms and conditions of parole, probation, pretrial release, or diversionary program.

states a claim for relief against defendants Dr. Krisher, Dr. Andrew Eddy, Dr. David C. Weil and Marc Stanley.

**Discussion.** Rule 8(a), Federal Rules of Civil Procedure provides for notice pleading. *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The United States Supreme Court held in *Erickson v. Pardus,* 551 U.S. 89, 93 (2007):

> . . . Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts showing that the pleader is entitled to relief are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.': *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555, 127 S.Ct. 1955 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).

Moreover, *pro se* complaints must be liberally construed. *Erickson*, 551 U.S. at 94; *Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980). Nonetheless, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' *Twombly*, 550 U.S. at 570." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).

**Claims pleaded by plaintiff Snead.**

The complaint alleges claims regarding treatment for a left inguinal hernia and gastrointestinal distress. It also pleads claims for unsafe medical transport and infringement of first amendment rights. These claims will be considered separately below.

<u>Deliberate Indifference to Serious Medical Need</u>. In September 2010, Snead was seen in nurse sick call for an extremely painful left inguinal hernia. He was referred to doctor's sick call and given a medical lay-in. Doc. 1-2, Complaint, ¶ 98. Snead was

examined by a doctor on October 14, 2010, who ordered a general surgery consultation and gave him a work restriction. *Id.*, ¶ 99. On November 5, 2010, defendant Weil requested approval for left inguinal hernia surgery. *Id.*, ¶100. On November 10, 2010, Snead had a telemeds conference with Dr. Lindsay, who agreed there was a need for the surgery. *Id.*, ¶ 101. On January 11, 2011, Dr. Levine ordered an upper gstrointestinal endoscopy to be performed. *Id.*, ¶ 105. Beginning in January 2011, Snead began experiencing debilitating migraine headaches, and Dr. Weil prescribed him Imitrex. *Id.*, ¶ 106. Snead's request for surgery had to be resubmitted when the Collegiate Review Board ("CRB") was implemented. Defendant Roberts failed to resubmit the request. *Id.*, ¶ 107. On February 2nd and March 30th, defendant Weil ordered the surgery to be scheduled, bu defendants Roberts failed to schedule the surgery. *Id.*, ¶¶ 109-09. The surgery was performed on June 15, 2011. Two hours after the surgery, Snead was transported, unsecured, in a transport van with front facing seats and seatbelts. *Id.*, ¶ 114. On June 17th, plaintiff was transported into a van in handcuffs, shackles, and a belly chain; he was not restrained with a seatbelt. *Id.*, ¶ 115. As the van entered the highway, the driver had to apply the brakes abruptly, and Snead was forced to brace himself, causing the internal sutures at the hernia repair site to rip out. *Id.*, ¶ 116. On June 18, Snead believed he was experiencing extensive internal bleeding. *Id.*, ¶ 118. Snead was repeatedly told him it was normal. *Id.*, ¶¶ 119- 122, 126. On September 20, 2011, plaintiff was told that he would not see a doctor unless it was life-threatening. *Id.*, ¶ 140.

From December 2011 through April 2012, plaintiff saw the podiatrist 4-5 times in an attempt to get shoes made for the 1⅜ inch difference in between his left and right leg.  *Id.*, ¶ 143. On January 18, 2012. Dr. Weil indicated that he did not believe that plaintiff had stomach problems; instead, plaintiff's problems were the result of bullets lodged in his back.  *Id.*, ¶ 146.

On February 22, 2012, Dr. Yost submitted a request for surgical consultation for plaintiff's left inguinal hernia site. The request was refused.  *Id.*, ¶ 147. On March 25, 2012, the request for the upper gastrointestinal endoscopy was approved.  *Id.*, ¶ 148.

Snead's medical conditions cause him constant, debilitating pain, loss of use, and diminished range of motion.  *Id.*, ¶ 154.

Snead states an Eighth Amendment claim for deliberate indifference to a serious medical need against Dr. Weil. The complaint alleges that Dr. Weil refused to give him pain medication and cancelled his scheduled endoscopy. Compl. at ¶¶ 132, 139. Plaintiff fails to state a claim against defendants Roberts, Parrish, Root and Stanforth. The complaint alleges that Roberts either refused or failed to resubmit approval for plaintiff's surgery and failed to schedule the surgery. Parrish allegedly stated that a medical history was required before the surgery could be scheduled. Root, after checking with the doctor about Snead's protrusion following surgery, stated that she had her orders from the doctor. After inspecting the surgery site, Stanforth said that Snead was looking good. None of the allegations concerning Roberts, Parrish, Root and Stanforth rise to the level of deliberate indifference to a serious medical need.

Unsafe Medical Transportation. When Snead was transported, he was in handcuffs, shackles, and a belly chain. *Id.*, ¶ 155. Round trips were about 9 hours. If plaintiff was not admitted to the medical facility, he remained in handcuffs and shackles the entire time. *Id.*, ¶ 156. Snead was never seat-belted during medical transport. *Id.*, ¶ 158.

Snead fails to state a claim against McGonigal, the driver of the transport van, for failing to fasten Snead's seat belt and for endangering Snead by driving recklessly. According to the complaint, McGonigal was forced to brake heavily when another car pulled out in front of him. McGonigal's actions did not violate plaintiff's Eighth Amendment rights.

Freedom of Speech. Defendant Stanley began showing animosity to plaintiff when Snead asked him to add a promised porter position to the 24/7 position he held increase his pay. Stanley refused, and Snead filed an informal complaint. *Id.*, ¶ 167. Snead informed his immediate supervisor that he was not physically capable of continuing the position and asked for lighter duty. Snead was required to continue working because another prisoner could not be located for Snead's position. *Id.*, ¶ 169. After Snead received medical work restrictions, Stanley referenced the paperwork Snead had filed and said that the medical restrictions did not permit Snead to perform enough to get paid. Stanley reclassified Snead as unassigned. *Id.*, ¶ 172. Once the medical restrictions had expired, Stanley reclassified Snead to a disciplinary position in

6

the kitchen. *Id.*, ¶ 173. When Snead protested, Stanley became irate and belligerent and ordered Snead to sign for the action; Snead signed under protest. *Id.*, ¶ 175.

Defendant Weil refused to see or treat Snead from July 21 through November 9, 2011 in retaliation for Snead exercising his freedom of speech. *Id.*, ¶ 179.

Defendant Mohr has ordered that no staff members other than security be replaced when their positions are open, which has resulted in poorly operated libraries. Prisoners are prevented from obtaining Ohio Administrative Code provisions and ODRC policies needed to file proper grievances. *Id.*, ¶ 183. The ODRC mailrooms are not properly staffed causing kites and grievances to not be delivered in a timely manner. *Id.*, ¶ 184.

Snead's claims against Parrish, Parks and Croft should also be dismissed. Prison officials whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged retaliatory behavior" cannot be liable under §1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984); *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982).

Snead's claims against Mohr for alleged deficiencies in the prison library and mailroom also fail to state a claim upon which relief may be granted. Prisoners have a right of access to the courts. *Bounds v. Smith,* 430 U.S. 817, 821-24 (1977). However, it is not enough to allege that defendants denied a prisoner access to legal materials, the prisoner must show actual injury to be entitled to relief. *Lewis v. Casey*, 518 U.S. 343, 249-51 (1996). A complaint that merely alleges that the plaintiff was "prejudiced" and fails to

7

allege "any specific or concrete prejudice to his cause" fails to state a claim for relief. *Pilgrim v. Littlefield,* 92 F.3d 413, 415-16 (6th Cir. 1996). *See, Stanley v. Vining,* 602 F.3d 767, 770 (6th Cir. 2010). In contrast, when the complaint alleges prejudice in a particular case, such as dismissal of an appeal because late mailing of a prisoner's claim of appeal by prison officials caused it to be filed late, resulting in the dismissal of the appeal, it states a claim for relief. *Dorn v. Lafler,* 601 F.3d 439, 444 (6th Cir. 2010).

**<u>Claims pleaded by plaintiff Darrah</u>.**

Plaintiff Darrah suffers from palmo-plantar hyper-keratoderma ("HPK"), which causes large and deep fissures to form on the bottom of the feet. These open wounds make Darrah much more susceptible to MRSA and staph infections. The only effective medicine to treat HPK is Soriatane, which has been refused due to cost. *Id.*, ¶¶ 186-87. Darrah had received the medication for four years, but it was discontinued without notice or examination by a doctor. *Id.*, ¶ 188. Defendant Dr. Weil submitted a request for Soriatane to the CRB. Defendant Krisher authorized the use of Methotrexate in place of Soriatane, but it has dangerous side effects for Darrah's condition and environment because it weakens the immune system and does not heal the fissures on his feet. *Id.*, ¶ 189. On June 14, 2011, Dr. Weil increased Darrah's dose of Methotrexate even though his feet had worsened since he started taking it, and he had no relief. *Id.*, ¶ 191. After three months of showing no improvement, Darrah's wife called Dr. Eddy's office to request that Darrah be put back on Soriatane, but Dr. Eddy refused her request. *Id.*, ¶ 192. On July 28, 2011, Darrah was seen by podiatrist who noted that Darrah had

8

substantial pain, HPK lesions, and multiple areas of severe HPK buildup. *Id.*, ¶ 193. On September 27, 2011, Dr. Weil increased his dose again even though it was not effective. *Id.*, ¶ 194. On November 16, 2011, Dr. Weil determined that Methotrexate was ineffective, and he filed a request to treat Darrah with Soriatane. *Id.*, ¶ 195. Dr. Weil's request was met with resistance by defendant Stanforth and the CRB due to cost. *Id.*, ¶ 196. For almost a year, Darrah had not been properly medicated and in extreme pain and in danger of MRSA infection. *Id.*, ¶ 197. Plaintiff was placed on Soriatane when his wife agreed to pay for the medication. *Id.*, ¶ 199. Even after his wife paid for the medication, defendant Wilson refused to give it to Darrah because the proper procedures were not in place. *Id.*, ¶ 202. Darrah began taking Soriatane on February 2, 2012. *Id.*, ¶ 203.

On initial screening the allegations in the complaint are sufficient to state Eighth Amendment claims against defendants Drs. Weil, Krisher, and Eddy.

On initial screening, the allegations in the complaint against defendant Stanforth state an Eighth Amendment claim for deliberate indifference to a serious medical need, but the allegations against defendant Wilson do not. With respect to defendant Stanforth, the complaint alleges that plaintiff's request to be treated with Soriatane was "still met with resistance from Defendant Stanforth and CRB due to the cost of the medication." Compl. at ¶ 196. Defendant Stanforth and the CRB approved the medication once Darrah's wife agreed to pay for it. *Id.* at ¶ 199. The allegations are sufficient to plead a claim that to save the prison money Stanforth knowingly left

plaintiff in unnecessary pain and without effective, prescribed treatment for a serous medical need. With respect to defendant Wilson, the complaint alleges that he refused to give Soriatane to plaintiff until the "proper procedures" were in place. *Id.* at ¶ 202. Prisons need to follow prescribed procedures when dispensing medication. There is no allegation that he was deliberately indifferent to Darrah's serious medical needs.

Darrah's Eighth Amendment claim against Drs. Weil, Krisher, and Eddy and defendant Karen Stanforth may go forward.

**Joinder of Plaintiffs.** Rule 20(a), Federal Rules of Civil Procedure provides:

(a) Persons Who May Join or Be Joined.

> (1) Plaintiffs. Persons may join in one action as plaintiffs if:
>
>> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>>
>> (B) any question of law or fact common to all plaintiffs will arise in the action.

Here plaintiffs do not assert claims arising out of the same transaction, occurrence, or series of occurrences and the complaint does not plead common questions of law or fact. The claims plaintiffs Snead and Darrah plead against Drs. Krisher, Eddy and Weil arise out of their respective individual medical conditions and the course of treatment for those conditions. The claims are entirely separate and independent. Only Plaintiff

10

Snead assert a freedom of speech claim against defendant Stanley. Consequently it is **ORDERED** that the Clerk of Court open a separate case for plaintiff Darrah's claims.

Accordingly, it is hereby **RECOMMENDED** that defendants Gary C. Mohr, Gary Croft, John DesMarais, Stuart Hudson, Robert Welch, Mona Parks, Rod B. Johnson, Jondrea Parrish, Ralph Wilson, Donald Root, Darhla Roberts, K. Layne, and D. McGonigal be **DISMISSED** for failure to state a claim under 42 U.S.C. §1983. This action continues as to defendants Dr. Krisher, Dr. Andrew Eddy, Dr. David C. Weil, Karen Stanforth and Marc Stanley. Further, it is **ORDERED** that the Clerk of Court open a separate case for plaintiff Darrah's claims, filing a copy of the complaint herein and this Report and Recommendation on Initial Screening in the new case file.

**IT IS FURTHER ORDERED** that the United States Marshal serve upon each defendant named in the complaint a summons, a copy of the complaint, and a copy of this Order. Defendants Gary C. Mohr, Gary Croft, John DesMarais, Stuart Hudson, Robert Welch, Mona Parks, Rod B. Johnson, Jondrea Parrish, Ralph Wilson, Donald Root, Darhla Roberts, K. Layne, and D. McGonigal are not required to answer the complaint unless later ordered to do so by the Court.

The Clerk of Court is DIRECTED to mail a copy of this Order to the Attorney General of Ohio, Corrections Litigation Section, 150 East Gay St., 16th Floor, Columbus, OH 43215.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the

Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. See 28 U.S.C. §636(b)(1)(B); Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to de novo review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

s/Mark R. Abel
United States Magistrate Judge