IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Robert A. Snead,                                    :

               Plaintiff            :            Civil Action 2:12-cv-00739

 v.                                                :            Judge Sargus

Gary C. Mohr, *et al.*,                             :            Magistrate Judge Abel

          Defendants            :

**Report and Recommendation**

Plaintiff Robert A. Snead, a State prisoner, brings this action under 42 U.S.C. § 1983 alleging violations of his rights under the First and Eighth Amendments. This matter is before the Magistrate Judge on defendants Mohr, DesMarais, Hudson, Stanforth, Parrish, Root, Layne and McGonigal's April 7, 2014 motion for judgment on the pleadings (doc. 101).

**I.      Allegations in the Amended Complaint**

Plaintiff Snead suffers from a left inguinal hernia, which was subsequently reinjured and causes him debilitating pain and loss of mobility. He also has congenital defects in his left hip joint that have deteriorated as a result of the hernia site, an injured right knee, gastrointestinal problems, chronic sinus infections, chronic debilitating headaches, congenital defects in his left femur, and side effects from medications. Am. Compl. at ¶ 27.

1

Plaintiff Snead's chronic sinus infection continues to degrade his sinus structures. He maintains that he is not currently receiving treatment for his sinus infections because the Collegial Review Board ("CRB") eliminated nasally inhaled steroids from the formularies to control medical costs. The complaint alleges that defendants Mohr, DesMarais, Hudson, Eddy and Krisher are responsible for this. *Id.* at ¶ 28.

The amended complaint alleges that Snead was told in September 2008 he would have to have his left hip replaced. A doctor recently ordered further testing, but the request was denied by Krisher and Eddy until his condition becomes immediately life threatening. Snead maintains that the congenital defects are obvious to a lay person and that x-rays demonstrate that one third of the femur head is missing and it is severely deformed. *Id.* at ¶ 29.

In 2009, Snead started experiencing stomach problems as result of taking Idomethicin for pain, which contained an allergen documented in his medical file. *Id.* at ¶ 30. In February 2010, he began to experience burning in his esophagus and lungs. *Id.* at ¶ 31. Snead injured his knee in March 2010 and sought care in April 2010, but he did not receive any medical treatment. *Id.* at ¶ 32.

During the summer of 2010, plaintiff suffered a left inguinal hernia. *Id.* at ¶ 33. He was seen by Dr. Elizabeth Holcomb, who ordered an MRI of his right knee and a gastrointestinal consultation. The request for an MRI was denied. *Id.* at ¶ 34.

On November 5, 2010, Dr. Weil submitted a request for surgical repair of Snead's hernia. *Id.* at ¶ 37. On December 1, 2010, Dr. Weil performed a physical examination of

2

plaintiff and cleared him for surgery, but defendant Stanforth never submitted the clearance to the surgical team. *Id.* at ¶ 39.

On January 11, 2011, Snead had a gastrointestinal consultation, and Dr. Levine ordered an upper gastrointestinal endoscopy. Dr. Weil refused to allow the procedure. *Id.* at ¶ 42. Plaintiff began experiencing debilitating headaches, and Dr. Weil prescribed Emitrex. *Id.* at ¶ 43.

Around January 2011, defendants Mohr, Hudson, DesMarais, Eddy and other unidentified individuals formed the Collegial Review Board and rescinded prior authorization for all procedures and outside medical care. Defendant Roberts refused to resubmit Snead's request for surgery, and the surgery was never rescheduled. *Id.* at ¶ 44. On February 2 and March 30, 2011, Dr. Weil requested that the hernia surgery be scheduled, but defendant Roberts maliciously refused to schedule it. *Id.* at ¶¶ 45-46. On April 5, 2011, the CRB approved the surgery, but Roberts refused to schedule the surgery and intentionally failed to follow the doctor's orders. *Id.* at ¶ 47.

On June 2, 2011, Snead met with defendant Parrish, who knew about Roberts' intentional delays in scheduling Snead's surgery and knowingly acquiesced, approved or condoned her conduct. *Id.* at ¶ 49. On June 15, 2011, plaintiff's left inguinal hernia was successfully repaired. Two hours after his surgery, Snead was transported to FMC without being secured by a seatbelt. *Id.* at ¶ 51.

On June 17, 2011, Snead was transported without being secured by a seatbelt by defendant McGonigal. *Id.* at ¶ 52. McGonigal drove recklessly, and the inmates were

3

jostled around. McGonigal was cut off by another van, and he had to heavily apply the brakes. Snead had to brace himself with his feet to avoid colliding into the metal cage. *Id.* at ¶ 53.

Upon his arrival at MaCI, Snead asked Nurse Frost if he saw fresh blood at the surgical site, and Frost stated that he did not. *Id.* at ¶ 54. On June 18, 2011, plaintiff experienced internal bleeding at the surgical site, pooling in his groin and down his leg. Plaintiff was told that this was normal and was sent back to his unit. *Id.* at ¶ 55. On June 20, 2011, Dr. Weil saw Snead and told him that the internal bleeding was normal. *Id.* at ¶ 56. On June 22, 2011, plaintiff was seen by Nurse Root. He had a protrusion the size of an orange at the surgical site and was in great distress. *Id.* at ¶ 57. Root telephoned Dr. Weil, who stated that the protrusion was normal and that he would see plaintiff within a week. The amended complaint alleges that Root knew that plaintiff was in need of immediate medical attention to prevent permanent injury and that he had authority to override the doctor's orders and send him out for medical care, but Root did not do so. *Id.* at ¶ 58.

On June 27, 2011, Snead was examined by Nurse Wolfe. Wolf notified Dr. Weil about the protrusion, but Dr. Weil said it was normal. *Id.* at ¶ 62. On June 30, Snead was seen by Dr. Weil who asked him if the protrusion had always been like this. Dr. Weil said that he could not drain the fluid without an ultrasound. Dr. Weil cancelled plaintiff's pre-approved follow up appointment with the surgeon and sent back to his unit without medical care. *Id.* at ¶ 64. Dr. Weil did not see Snead for his scheduled

appointments on July 5 or 7. He refused his request for pain medications. *Id.* at ¶¶ 65-68. On July 13, 2011, plaintiff had an ultrasound. *Id.* at ¶ 69. On July 21, Dr, Weil prescribed aspirin to dissolve the blood clot and prescribed pain medication. *Id.* at ¶ 70.

On September 1, 2011, Nurse Stanforth said that his surgical site looked good and that she would do some online research regarding his problems and get back to him. *Id.* at ¶ 74. On November 9, 2011, Dr. Weil told plaintiff he would have to learn to live with the problems he had with the hernia surgical site. *Id.* at ¶ 77.

On August 24, 2011, Dr. Weil decided that Snead did not require an endoscopy as previously ordered. *Id.* at ¶ 75.

On September 20, 2011, Nurse Layne told Snead that he would not see the doctor until his condition became immediately life threatening. The amended complaint maintains that Layne intentionally and repeatedly prevented plaintiff from seeing a doctor. *Id.* at ¶ 76.

Between December 2011 and April 2012, plaintiff met with the podiatrist 4-5 times and attempted to acquire the shoes necessary for the 1" difference between his left and right legs. The podiatrists stated that plaintiff's requests were denied by the CRB. *Id.* at ¶ 79.

On January 18, 2012, Dr. Weil discontinued plaintiff's medication because he did not believe that Snead had stomach problems. *Id.* at ¶ 82. On February 22, 2012, Dr. Yost requested that plaintiff undergo surgical consultation for the hernia site, but the request

was denied due to expense. *Id.* at ¶ 83. On March 13, 2012, Dr. Yost requested an endoscopy and prescribed plaintiff medication for his stomach problems.

On March 12, 2012, Snead had an endoscopy. *Id.* at ¶ 85. On June 12, 2012, Dr. Stephens examined plaintiff and told him that further surgery was denied and all she could do was prescribe pain medications. *Id.* at ¶ 88.   On August 9, 2012, Snead was told by Dr. Cataldi that he was no longer permitted to write prescriptions for chronic use pain medication and discontinued his Neurontin. *Id.* at ¶ 90. On October 4, 2012, Nurse Layne denied Snead access to medical care by failing to schedule appointments for him with the doctor and dietician in retaliation for grievances that he filed. *Id.* at ¶ 89.

The amended complaint also alleges that Dr. Eddy and Dr. Krisher, under the orders of Mohr, Hudson, and DesMarais, denied testing due to costs. *Id.* at ¶ 91. Defendants have refused to prescribe Flexaryl. *Id.* at ¶ 94.

On round trips to FMC, plaintiff was in handcuffs and shackles for approximately nine hours. The handcuffs and shackles cut into his skin and bruised him. Even when he was inside a secure facility, he was in excessive restraints. *Id.* at ¶ 97. Snead was never belted on any medical trip. *Id.* at ¶ 98.

The amended complaint alleges that defendant Stanley violated plaintiff's First Amendment rights. On March 3, 2010, Snead filed an informal complaint against Stanley. *Id.* at ¶ 104. On September 12, 2010, Snead spoke with his immediate supervisor and requested a lighter duty position, but he was required to continue working despite

his injuries. *Id.* at ¶ 106. On October 14, 2010, Snead was placed on medical work restrictions. *Id.* at ¶ 109. When his medical restrictions expired, Stanley ignored his health service request form. *Id.* at ¶ 111.

Plaintiff maintains that Dr. Weil's refusal to see him in retaliation for his filing a grievance. *Id.* at ¶¶ 115-16. Plaintiff also maintains that Nurse Layne prevented his access to the doctor in retaliation for his grievances. *Id.* at ¶¶ 120-21. Defendant Parrish acquiesced, approved and condoned Layne's actions. *Id.* at ¶ 122.

The CRB was implemented to deny, delay and limit medical care and to offer less effective medical care to prisoners. *Id.* at ¶ 132. At its inception, the CRB executed a blanket denial of all previously approved and pending surgeries, procedures, tests and medications, including plaintiff's surgery for the left inguinal hernia repair. The foremost objective for these decisions was cost savings. *Id.* at ¶ 133. Defendants Mohr, Hudson, DesMarais, Eddy and Kisher began a campaign to deny, delay, limit and offer less than effective medical care and treatment and influenced every decision of their subordinates. *Id.* at ¶ 134. These defendants also wrote new medical protocols and formularies to further deny and limit medical care in order to control the actions of their subordinates. *Id.* at ¶ 135. Defendants Stanforth, Mohr, Hudson, DesMarais, Eddy, Krisher, and Weil were active participants in the denial of medical care to plaintiff. *Id.* at ¶¶ 136-37. The restrictions have denied plaintiff access to an orthopedist, a gastroenterologist, a surgical podiatrist, and several medications. *Id.* at ¶ 138. Plaintiff maintains his need for prompt medical attention would have been obvious to a lay

person. *Id.* at ¶ 140. Defendant Parrish failed in her duty to protect plaintiff. *Id.* at ¶ 141. Defendant Roberts acted with a culpable state of mind when she refused to resubmit and schedule plaintiff's surgery. *Id.* at ¶ 143. Plaintiff's surgery was delayed more than nine months, and the complaint asserts that he would have had a better outcome had he had surgery immediately. *Id.* at ¶ 144. Defendant Dr. Weil instructed his subordinates to deny plaintiff medical care and pain medications and intentionally cancelled a pre-approved follow-up visit with his surgeon. *Id.* at ¶ 145.

The complaint maintains that defendant Stanforth's actions and inactions in denying plaintiff medical care demonstrates that she implicitly authorized, condoned, approved, or knowingly acquiesced in the conduct forming the basis of the complaint. *Id.* at ¶ 146. Defendant Stanforth failed to ensure that off-site appointments were scheduled and acted outside of the scope of her training. *Id.* at ¶¶ 147-48. Defendant Stanforth's action denied plaintiff pain medications when a lay person would have known he was in great pain.  *Id.* at ¶ 149. Stanforth took these actions in retaliation for plaintiff filing numerous grievances.  *Id.* at ¶ 150.

Defendants Layne and Root acted as gatekeepers with regarding to access to doctors and medical care. Layne and Root were required to perform physical assessments when they saw him and even a lay person would have known that plaintiff required medical attention. *Id.* at ¶¶ 151-52. Root had the discretion to provide Snead with needed outside medical care. Although Root knew something had to be done, he knowingly acquiesced in Snead being denied medical care for his hematoma. *Id.* at ¶

8

152. Snead was treated as a nuisance by defendants Layne, Root, Weil and Stanforth. Plaintiff was told he would get more done if he was not so demanding. *Id.* at ¶ 153. The incompetence of Stanforth, Layne, Root and Weil led to multiple acts of negligence neglect which are evidence of deliberate indifference. *Id.* at ¶ 154.

On June 17, 2011, defendant McGonigal was in a reckless hurry when he failed to seat belt plaintiff and then drove recklessly and dangerously. *Id.* at ¶ 155.

The CRB has denied 50% of the requests for medical care, and this has led to 50% fewer requests being submitted. Only 25% of prisoners requesting care receive care. If an inmate is not in an immediately life threatening condition, then he will not receive outside medical care. *Id.* at ¶ 156.

## II.    Arguments of the Parties

### A.    Defendants

Defendants argue that Snead's allegations against them in their official capacities for money damages must be dismissed because of immunity afforded by the Eleventh Amendment and a corresponding lack of subject matter jurisdiction. Claims for monetary damages against state officials in their official capacity are construed as if the plaintiff were suing the state itself.  Defendants also argue that Snead's claims against them in their official capacity for injunctive relief should be dismissed for failure to state a claim upon which relief can be granted.

Defendants argue that plaintiff's claims against ODRC Director Gary C. Mohr fail because the original complaint does not allege any factual allegations showing that

Mohr was personally involved in the medical care and treatment provided to him or that he otherwise encouraged, acquiesced or approved of any facet of Snead's care or treatment. Snead argues that Mohr infringed his First Amendment rights for failing to replace key library personnel resulting in inadequate staffing and insufficient hours of operation. Mohr also implemented lower paying positions in the mail rooms, which have resulted in 5-12 day delays in delivering mail to inmates.

Defendants maintain that plaintiff is proceeding against Mohr under a theory of respondeat superior liability, which is not cognizable under 42 U.S.C. § 1983.

Defendants argue that plaintiff's assertion that the Collegial Review process is unconstitutional is without merit because prisoners do not have a constitutional right to limitless medical care.

Defendants argue that plaintiff's claims against Dr. John DesMarais and the Bureau of Medical Services Chief Stuart Hudson fail because there are no allegations asserting that either defendant was personally involved in the particular medical care and treatment that Snead received or made decisions to withhold such care and treatment.

The complaint alleges that defendant Health Care Administrator Karen Stanforth is not qualified for her position and that she plays an active role in the functioning of the CRB. The complaint asserts that she commonly overrules physicians' orders for specialists, surgeons and tests and indiscriminately imposes lengthy delays when

approving appointments for follow-up care. Defendants argue, however, that none of these allegations are factually supported.

The only factual allegations against Stanforth are comments she allegedly made during an appointment when Snead's hernia repair surgical site was examined that she would do some online research about his reported problems. Plaintiff's claims against Stanforth concerning the implementation and operation of the Collegial Review process and efforts to reduce the costs of medical care also fail because they are based on a theory of respondeat superior.

Defendants argue that defendant Root is only mentioned in the context of a single visit in which she examined a protrusion at the sight of plaintiff's hernia surgical repair. Nurse Root contacted Dr. Weil and acted according to his orders. The amended complaint asserts that Root knew that Snead was in need of immediate medical attention to prevent permanent injury and that she had authority to override the Dr. Weil's orders and send Snead out for medical care.

On September 20, 2011, Snead was seen by Nurse Layne. The complaint alleges that she told plaintiff that he would not see a doctor unless his condition became life-threatening. The amended complaint alleges that Layne repeatedly and intentionally prevented Snead from seeing a doctor. Defendants argue, however, that plaintiff does not support his assertion with any factual allegations or identify any injuries he incurred as a result of not being sent out for medical care.

11

The complaint alleges that Inspector Parrish failed to provide meaningful review of prisoner complaints and that she was an active participant in denying him medical care in retaliation for his grievances.

Defendants argue that plaintiff's claims against Corrections Officer McGonigal fail because his allegations that he failed to notice another van and was forced to decelerate rapidly does not show deliberate indifference to Snead's safety.

### B.    Plaintiff

Plaintiff argues that he is not alleging that he should be entitled to limitless free medical care or that his complaints regarding lack of medical treatment are merely differences of opinion. Plaintiff maintains that he experiences constant pain and impaired function and is attempting to prevent further permanent injuries. Plaintiff argues that he should not be left suffering although defendants have stated he should learn to live with his pain.

Plaintiff maintains that he seeks no more medical care than the lowest level of care that is afforded law abiding citizens through Medicaid and Medicare. Plaintiff argues that the defendants he seeks to have reinstated were deliberately indifferent to his serious medical needs. To so drastically change plaintiff's access to specialty care when such care is recommended by his treating doctors shows an awareness of the risk of harm to plaintiff.

Plaintiff argues that his claims are not barred by the Eleventh Amendment. He only seeks injunctive and declaratory relief from defendants in their official capacities and compensatory, nominal and punitive awards in their individual capacities.

Plaintiff acknowledges that neglect is not typically sufficient in a claim based on deliberate indifference to serious medical needs, he maintains where there is a consistent pattern of reckless or negligent conduct, deliberate indifference may be shown. He maintains that the multiple acts of negligence may be evidence of the magnitude of risks created by defendants' conduct and the knowledge of the risks by defendants. Acts that appear to be negligent in isolation, may constitute deliberate indifference if they are repeated as in his case. Plaintiff argues that he has not alleged that any defendants were liable on the basis of respondeat superior. Plaintiff maintains that Mohr, Hudson, DesMarais and Eddy conspired to change the level of health care plaintiff could receive with no other concern other than saving money. They exhibited deliberate indifference to plaintiff's serious medical needs and caused their subordinates to do the same. Plaintiff argues that the defendants were not permitted to refuse or delay medical care through the implementation of the CRB because of costs. Plaintiff argues that he has shown sufficient personal involvement on the part of these defendants because prison officials who are responsible for policies that resulted in the deprivation of medical care can be held liable.

Plaintiff also maintains that Stanforth is an active participant in the CRB and that her job was to ensure that the doctors' orders for outside medical care were followed in

a reasonably timely manner. Dr. Levine recommended that plaintiff have an endoscopy, but Stanforth took no action to ensure that it was scheduled. Snead waited nearly 10 months for surgery to correct the left inguinal hernia. Stanforth delayed scheduling plaintiff to see a doctor for pain medication although she knew he was in severe pain. Plaintiff maintains that it is improper for Stanforth, a registered nurse, to supervise medical doctors and demonstrates that the financial concerns outweigh sound medical judgment. Plaintiff contends that the complaint adequately alleges that Stanforth failed to follow doctors' recommendations, obstructed access to the doctor, failed to perform her administrative functions, failed to supervise Dr. Weil, failed to provide care due to cost, and interfered in the grievance process.

With respect to defendant Parrish, plaintiff maintains that she had more than an administrative role and that she directly denied plaintiff medical care. When Parrish saw plaintiff on June 2, 2011, a lay person would have recognized that plaintiff was in dire need of immediate medical care. Plaintiff contends that after Layne was dismissed by this Court, she denied plaintiff medical care on three more occasions. Both Layne and Root treated plaintiff as a nuisance rather than a patient. Layne denied plaintiff care because of her personal dislike of him rather than on sound medical judgment. Layne and Root serve as gate keepers for the doctors and were deliberately indifferent to his serious medical needs.

Plaintiff acknowledges that he was seen in the medical department, but he maintains on many of those occasions he did not receive treatment. Plaintiff does not allege, however, that he was denied all care, but that he received inadequate care.

Plaintiff argues that he is not required to produce medical evidence at this stage of the proceedings, particularly because he has been denied access to testing. He maintains that his injuries cannot be considered minor maladies or non-obvious injuries that require verifying medical evidence.  Nearly all of the defendants are health care professionals and should have recognized that plaintiff was in distress.

### III.    Motion for Judgment on the Pleadings

In ruling on a motion for judgment on the pleadings, the Court accepts all well-pleaded material allegations of the complaint as true. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir.2007). The Court must then decide whether the moving party is entitled to judgment as a matter of law. *Id.* This is the same standard applied in deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). *Id.*

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true.  *See Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (U.S. 2007) (citing *Bell v. Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007));  *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995); *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1982). Although the court must apply a liberal construction of the complaint in favor of the

party opposing the motion to dismiss, *see Davis H. Elliot Co. v. Caribbean Utilities Co.*, 513 F.2d 1176, 1182 (6th Cir. 1975), a court will not accept conclusions of law or unwarranted inferences of fact cast in the form of factual allegations, *see Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005); *Blackburn v. Fisk Univ.*, 443 F.2d 121, 123-124 (6th Cir. 1971). In reading a complaint, however, a court will indulge all reasonable inferences that might be drawn from the pleading. *See Fitzke v. Shappell*, 468 F.2d 1072, 1076 n.6 (6th Cir. 1972). Because the motion under Rule 12(b)(6) is directed solely to the complaint itself, *see Roth Steel Prods.*, 705 F.2d at 155; *Sims v. Mercy Hosp. of Monroe*, 451 F.2d 171, 173 (6th Cir. 1983), the court must focus on whether the claimant is entitled to offer evidence to support the claims, rather than whether the plaintiff will ultimately prevail, *see McDaniel v. Rhodes*, 512 F. Supp. 117, 120 (S.D. Ohio 1981). A federal court cannot consider extrinsic evidence in determining whether a complaint states a claim upon which relief can be granted. *See Roth Steel Prods.*, 705 F.2d at 155-56.

To survive a motion to dismiss under Rule 12(b)(6), the allegations in a complaint "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008), quoting *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir.2007) (emphasis in original). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Twombly*, 550 U.S. at 555.

### IV.     Discussion

<u>Defendant McGonigal</u>. Plaintiff fails to state a claim against McGonigal, the driver of the transport van, for failing to fasten Snead's belt. McGonigal was forced to brake suddenly, and plaintiff alleges that he was driving recklessly. These allegations do not amount to a violation of plaintiff's Eighth Amendment rights.

<u>Formation of the CRB</u>. Plaintiff maintains that medical treatment was either denied or delayed based on the Collegial Review Board ("CRB"). Plaintiff argues that defendants Mohr, DesMarais, Hudson, Eddy and Krisher are responsible for eliminating nasally inhaled steroids from the formularies in an effort to control medical costs. Plaintiff contends that the failure to provide the steroids has resulted in continual sinus infections that degrade his sinus structures. Plaintiff contends that the his left hip requires replacement and that further testing has been denied. Plaintiff also maintains that his pain medication contains a known allergen to him, which has resulted in damage to esophagus and lungs. Plaintiff also sought treatment following an injury to his knee, but he was refused treatment. Plaintiff further alleges that his left inguinal hernia remained uncorrected for months prior to undergoing surgery. Following surgery, a hematoma formed at the surgical site. The amended complaint asserts that plaintiff's requests for medical treatment were ignored despite the clear need for treatment.

The amended complaint asserts that in forming the CRB, defendants Mohr, Hudson, DesMarais, Eddy, Krisher and Stanforth violated plaintiff's Eighth

Amendment rights. Plaintiff maintains that cost-cutting measures are responsible for the alleged denial of his medical care. This argument was rejected by the Third Circuit in *Winslow v. Prison Health Services*:

> [T]he naked assertion that Defendants considered cost. . . does not suffice to state a claim for deliberate indifference, as prisoners do not have a constitutional right to limitless medical care, free of cost constraints under which law-abiding citizens receive treatment. *See Reynolds v. Wagner*, 128 F.3d 166, 175 (3rd Cir. 1997) ("[T]he deliberate indifference standard of *Estelle* does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society."); *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The cost of treatment alternatives is a factor in determining what constitutes adequate, minimum-level care, but medical personnel cannot simply resort to an easier course of treatment that they know is ineffective." (citations omitted)); *Caines v. Hendricks*, No. 05–1701, 2007 U.S. Dist. LEXIS 9453, 2007 WL 496876 at *8 (D. N.J. Feb.9, 2007) ("[I]t is not a constitutional violation for prison authorities to consider the cost implications of various procedures, which inevitably may result in various tests or procedures being deferred unless absolutely necessary.").

*Winslow v. Prison Health Services*, 406 Fed. Appx. 671, 674–75 (3rd Cir.2011). *See also Brightwell v. Lehman*, No. Civ.A. 03–205J, 2006 WL 931702, at *8 (W.D.Pa. April 10, 2006). ("Resources are not infinite and reasonable allocation of those resources, taking into account cost, does not amount to deliberate indifference even if a prisoner does not receive the most costly treatments or his treatments of choice."); *Glatts v. Lockett*, No. 09-29, WL 772917, at *6 -7  (W.D. Pa.,Feb. 28, 2011)("[W]e find that such a policy of providing economic incentive to keep costs under control . . . simply lacks the requisite subjective component so as to state an Eighth Amendment claim of deliberate

indifference, especially given the fact that Plaintiff did receive his surgery, albeit, according to him, belatedly.").

<u>Defendant Parrish</u>. Plaintiff's claims against defendant Jondrea Parrish also fail as a matter of law. The complaint alleges that Parrish fails to provide meaningful review of prisoners' complaints. Plaintiff filed grievances with Parrish concerning modification of his work requirements and the adequacy of his medical care. Prison officials whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged retaliatory behavior" cannot be liable under §1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984); *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982). Plaintiff maintains that Parrish knowingly acquiesced, approved or condoned the conduct underlying his grievances, but such conclusory allegations are insufficient to state a plausible claim for relief.

<u>Deliberate Indifference to a Serious Medical Need</u>. The Eighth Amendment forbids prison officials from "unnecessarily and wantonly inflicting pain" on an inmate by acting with "deliberate indifference" toward the inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To demonstrate an Eighth Amendment deprivation, a prisoner must show that a prison official acted with deliberate indifference to his serious medical needs. *Estelle*, 429 U.S. at 103-04. Prison officials are

19

liable only if they know of and disregard "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838. Mere negligence does not constitute deliberate indifference. *See, Estelle*, 429 U.S. at 106. Further, a prisoner does not state a claim merely by pleading that he disagrees with the diagnosis or treatment. *Estelle*, 429 U.S. at 107-08; *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

The Sixth Circuit requires verifying medical evidence to demonstrate the deleterious effect of the lack of treatment when only minor maladies or non-obvious complaints of a serious need for medical care were present. "[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001)(quoting *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir. 1994). Verifying medical evidence provides the court with the best available evidence as to whether the alleged deprivation is sufficiently serious and whether the inmate was at substantial risk of harm. *Id.*

20

Here, plaintiff fails to allege facts demonstrating that defendant Root was deliberately indifferent to his serious medical needs. Plaintiff refers to one incident involving Nurse Root. After examining plaintiff's protrusion, Nurse Root telephoned the doctor. Dr. Weil indicated that the protrusion was normal. After checking with the doctor about Snead's protrusion following surgery, Root stated that she had her orders from the doctor. Plaintiff maintains that Root had the authority to override the doctor's instruction. The amended complaint alleges that Nurse Layne told plaintiff that he would not see the doctor until his condition became immediately life threatening and that Layne intentionally and repeatedly prevented plaintiff from seeing a doctor.

Although plaintiff maintains that he required immediate medical attention, the allegations concerning Root and Layne fail to provide sufficient detail demonstrating that their actions rise to the level of deliberate indifference to a serious medical need. Other than allegations related to the CRB, the only allegation concerning Nurse Stanforth is that she informed plaintiff that his surgical site looked good and that she would perform some internet research. This allegation is insufficient to demonstrate that Stanforth was deliberately indifferent to plaintiff's serious medical needs.

## V.     Conclusion

For the reasons stated above, the Magistrate Judge RECOMMENDS that defendants Mohr, DesMarais, Hudson, Stanforth, Parrish, Root, Layne and McGonigal's April 7, 2014 motion for judgment on the pleadings (doc. 101) be GRANTED.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005); *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir. 1995). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991).

> s/Mark R. Abel
> United States Magistrate Judge