IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Robert A. Snead,                                    :

                Plaintiff                    :        Civil Action 2:12-cv-00739

 v.                                                 :        Judge Sargus

Gary C. Mohr,                                       :        Magistrate Judge Abel

              Defendant                    :


**Report and Recommendation**

This matter is before the Magistrate Judge defendants Dr. Weil, Dr. Eddy, Dr. Krisher, and Mr. Stanley's May 5, 2014 motion for summary judgment (doc. 112).

## I.    Allegations in the Amended  Complaint

Plaintiff Snead suffers from a left inguinal hernia, which was subsequently reinjured and causes him debilitating pain and loss of mobility. He also has congenital defects in his left hip joint that have deteriorated as a result of the hernia site, an injured right knee, gastrointestinal problems, chronic sinus infections, chronic debilitating headaches, congenital defects in his left femur, and side effects from medications. Am. Compl. at ¶ 27.

Plaintiff Snead's chronic sinus infection continues to degrade his sinus structures. He maintains that he is not currently receiving treatment for his sinus infections because the Collegial Review Board ("CRB") eliminated nasally inhaled steroids from

1

the formularies to control medical costs. The complaint alleges that defendants Mohr, DesMarais, Hudson, Eddy and Krisher are responsible for this. *Id.* at ¶ 28.

The amended complaint alleges that Snead was told in September 2008 he would have to have his left hip replaced. A doctor recently ordered further testing, but the request was denied by Krisher and Eddy until his condition becomes immediately life threatening. Snead maintains that the congenital defects are obvious to a lay person and that x-rays demonstrate that one third of the femur head is missing and it is severely deformed. *Id.* at ¶ 29.

In 2009, Snead started experiencing stomach problems as result of taking Idomethicin for pain, which contained an allergen documented in his medical file. *Id.* at ¶ 30. In February 2010, he began to experience burning in his esophagus and lungs. *Id.* at ¶ 31. Snead injured his knee in March 2010 and sought care in April 2010, but he did not receive any medical treatment. *Id.* at ¶ 32.

During the summer of 2010, plaintiff suffered a left inguinal hernia. *Id.* at ¶ 33. He was seen by Dr. Elizabeth Holcomb, who ordered an MRI of his right knee and a gastrointestinal consultation. The request for an MRI was denied. *Id.* at ¶ 34.

On November 5, 2010, Dr. Weil submitted a request for surgical repair of Snead's hernia. *Id.* at ¶ 37. On December 1, 2010, Dr. Weil performed a physical examination of plaintiff and cleared him for surgery, but defendant Stanforth never submitted the clearance to the surgical team. *Id.* at ¶ 39.

On January 11, 2011, Snead had a gastrointestinal consultation, and Dr. Levine ordered an upper gastrointestinal endoscopy. Dr. Weil refused to allow the procedure. *Id.* at ¶ 42. Plaintiff began experiencing debilitating headaches, and Dr. Weil prescribed Emitrex. *Id.* at ¶ 43.

Around January 2011, defendants Mohr, Hudson, DesMarais, Eddy and other unidentified individuals formed the Collegial Review Board and rescinded prior authorization for all procedures and outside medical care. Defendant Roberts refused to resubmit Snead's request for surgery, and the surgery was never rescheduled. *Id.* at ¶ 44. On February 2 and March 30, 2011, Dr. Weil requested that the hernia surgery be scheduled, but defendant Roberts maliciously refused to schedule it. *Id.* at ¶¶ 45-46. On April 5, 2011, the CRB approved the surgery, but Roberts refused to schedule the surgery and intentionally failed to follow the doctor's orders. *Id.* at ¶ 47.

On June 2, 2011, Snead met with defendant Parrish, who knew about Roberts' intentional delays in scheduling Snead's surgery and knowingly acquiesced, approved or condoned her conduct. *Id.* at ¶ 49. On June 15, 2011, plaintiff's left inguinal hernia was successfully repaired. Two hours after his surgery, Snead was transported to FMC without being secured by a seatbelt. *Id.* at ¶ 51.

On June 17, 2011, Snead was transported without being secured by a seatbelt by defendant McGonigal. *Id.* at ¶ 52. McGonigal drove recklessly, and the inmates were jostled around. McGonigal was cut off by another van, and he had to heavily apply the

3

brakes. Snead had to brace himself with his feet to avoid colliding into the metal cage. *Id.* at ¶ 53.

Upon his arrival at MaCI, Snead asked Nurse Frost if he saw fresh blood at the surgical site, and Frost stated that he did not. *Id.* at ¶ 54. On June 18, 2011, plaintiff experienced internal bleeding at the surgical site, pooling in his groin and down his leg. Plaintiff was told that this was normal and was sent back to his unit. *Id.* at ¶ 55. On June 20, 2011, Dr. Weil saw Snead and told him that the internal bleeding was normal. *Id.* at ¶ 56. On June 22, 2011, plaintiff was seen by Nurse Root. He had a protrusion the size of an orange at the surgical site and was in great distress. *Id.* at ¶ 57. Root telephoned Dr. Weil, who stated that the protrusion was normal and that he would see plaintiff within a week. The amended complaint alleges that Root knew that plaintiff was in need of immediate medical attention to prevent permanent injury and that he had authority to override the doctor's orders and send him out for medical care, but Root did not do so. *Id.* at ¶ 58.

On June 27, 2011, Snead was examined by Nurse Wolfe. Wolf notified Dr. Weil about the protrusion, but Dr. Weil said it was normal. *Id.* at ¶ 62. On June 30, Snead was seen by Dr. Weil who asked him if the protrusion had always been like this. Dr. Weil said that he could not drain the fluid without an ultrasound. Dr. Weil cancelled plaintiff's pre-approved follow up appointment with the surgeon and sent back to his unit without medical care. *Id.* at ¶ 64. Dr. Weil did not see Snead for his scheduled appointments on July 5 or 7. He refused his request for pain medications. *Id.* at ¶¶ 65-

68.  On July 13, 2011, plaintiff had an ultrasound. *Id.* at ¶ 69. On July 21, Dr, Weil prescribed aspirin to dissolve the blood clot and prescribed pain medication. *Id.* at ¶ 70.

On August 24, 2011, Dr. Weil decided that Snead did not require an endoscopy as previously ordered. *Id.* at ¶ 75.

On September 1, 2011, Nurse Stanforth said that his surgical site looked good and that she would do some online research regarding his problems and get back to him. *Id.* at ¶ 74.  On November 9, 2011, Dr. Weil told plaintiff he would have to learn to live with the problems he had with the hernia surgical site. *Id.* at ¶ 77.

On September 20, 2011, Nurse Layne told Snead that he would not see the doctor until his condition became immediately life threatening. The amended complaint maintains that Layne intentionally and repeatedly prevented plaintiff from seeing a doctor. *Id.* at ¶ 76.

Between December 2011 and April 2012, plaintiff met with the podiatrist 4-5 times and attempted to acquire the shoes necessary for the 1" difference between his left and right legs. The podiatrists stated that plaintiff's requests were denied by the CRB. *Id.* at ¶ 79.

On January 18, 2012, Dr. Weil discontinued plaintiff's medication because he did not believe that Snead had stomach problems. *Id.* at ¶ 82. On February 22, 2012, Dr. Yost requested that plaintiff undergo surgical consultation for the hernia site, but the request was denied due to expense. *Id.* at ¶ 83. On March 13, 2012, Dr. Yost requested an endoscopy and prescribed plaintiff medication for his stomach problems.

On March 12, 2012, Snead had an endoscopy. *Id.* at ¶ 85. On June 12, 2012, Dr. Stephens examined plaintiff and told him that further surgery was denied and all she could do was prescribe pain medications. *Id.* at ¶ 88. On August 9, 2012, Snead was told by Dr. Cataldi that he was no longer permitted to write prescriptions for chronic use pain medication and discontinued his Neurontin. *Id.* at ¶ 90. On October 4, 2012, Nurse Layne denied Snead access to medical care by failing to schedule appointments for him with the doctor and dietician in retaliation for grievances that he filed. *Id.* at ¶ 89.

The amended complaint also alleges that Dr. Eddy and Dr. Krisher, under the orders of Mohr, Hudson, and DesMarais, denied testing due to costs. *Id.* at ¶ 91. Defendants have refused to prescribe Flexaryl. *Id.* at ¶ 94.

On round trips to FMC, plaintiff was in handcuffs and shackles for approximately nine hours. The handcuffs and shackles cut into his skin and bruised him. Even when he was inside a secure facility, he was in excessive restraints. *Id.* at ¶ 97. Snead was never belted on any medical trip. *Id.* at ¶ 98.

The amended complaint alleges that defendant Stanley violated plaintiff's First Amendment rights. On March 3, 2010, Snead filed an informal complaint against Stanley. *Id.* at ¶ 104. On September 12, 2010, Snead spoke with his immediate supervisor and requested a lighter duty position, but he was required to continue working despite his injuries. *Id.* at ¶ 106. On October 14, 2010, Snead was placed on medical work

6

restrictions. *Id.* at ¶ 109. When his medical restrictions expired, Stanley ignored his health service request form. *Id.* at ¶ 111.

Plaintiff maintains that Dr. Weil's refusal to see him in retaliation for his filing a grievance. *Id.* at ¶¶ 115-16.  Plaintiff also maintains that Nurse Layne prevented his access to the doctor in retaliation for his grievances. *Id.* at ¶¶ 120-21. Defendant Parrish acquiesced, approved and condoned Layne's actions. *Id.* at ¶ 122.

The CRB was implemented to deny, delay and limit medical care and to offer less effective medical care to prisoners. *Id.* at ¶ 132. At its inception, the CRB executed a blanket denial of all previously approved and pending surgeries, procedures, tests and medications, including plaintiff's surgery for the left inguinal hernia repair. The foremost objective for these decisions was cost savings. *Id.* at ¶ 133. Defendants Mohr, Hudson, DesMarais, Eddy and Kisher began a campaign to deny, delay, limit and offer less than effective medical care and treatment and influenced every decision of their subordinates. *Id.* at ¶ 134. These defendants also wrote new medical protocols and formularies to further deny and limit medical care in order to control the actions of their subordinates. *Id.* at ¶ 135. Defendants Stanforth, Mohr, Hudson, DesMarais, Eddy, Krisher, and Weil were active participants in the denial of medical care to plaintiff. *Id.* at ¶¶ 136-37. The restrictions have denied plaintiff access to an orthopedist, a gastroenterologist, a surgical podiatrist, and several medications. *Id.* at ¶ 138. Plaintiff maintains his need for prompt medical attention would have been obvious to a lay person. *Id.* at ¶ 140. Defendant Parrish failed in her duty to protect plaintiff. *Id.* at ¶ 141.

Defendant Roberts acted with a culpable state of mind when she refused to resubmit and schedule plaintiff's surgery. *Id.* at ¶ 143. Plaintiff's surgery was delayed more than nine months, and the complaint asserts that he would have had a better outcome had he had surgery immediately. *Id.* at ¶ 144. Defendant Dr. Weil instructed his subordinates to deny plaintiff medical care and pain medications and intentionally cancelled a pre-approved follow-up visit with his surgeon. *Id.* at ¶ 145.

The complaint maintains that defendant Stanforth's actions and inactions in denying plaintiff medical care demonstrates that she implicitly authorized, condoned, approved, or knowingly acquiesced in the conduct forming the basis of the complaint. *Id.* at ¶ 146. Defendant Stanforth failed to ensure that off-site appointments were scheduled and acted outside of the scope of her training. *Id.* at ¶¶ 147-48. Defendant Stanforth's action denied plaintiff pain medications when a lay person would have known he was in great pain.  *Id.* at ¶ 149. Stanforth took these actions in retaliation for plaintiff filing numerous grievances.  *Id.* at ¶ 150.

Defendants Layne and Root acted as gatekeepers with regarding to access to doctors and medical care. Layne and Root were required to perform physical assessments when they saw him and even a lay person would have known that plaintiff required medical attention. *Id.* at ¶¶ 151-52. Root had the discretion to provide Snead with needed outside medical care. Although Root knew something had to be done, he knowingly acquiesced in Snead being denied medical care for his hematoma. *Id.* at ¶ 152. Snead was treated as a nuisance by defendants Layne, Root, Weil and Stanforth.

Plaintiff was told he would get more done if he was not so demanding. *Id.* at ¶ 153. The incompetence of Stanforth, Layne, Root and Weil led to multiple acts of negligence neglect which are evidence of deliberate indifference. *Id.* at ¶ 154.

On June 17, 2011, defendant McGonigal was in a reckless hurry when he failed to seat belt plaintiff and then drove recklessly and dangerously. *Id.* at ¶ 155.

The CRB has denied 50% of the requests for medical care, and this has led to 50% fewer requests being submitted. Only 25% of prisoners requesting care receive care. If an inmate is not in an immediately life threatening condition, then he will not receive outside medical care. *Id.* at ¶ 156.

## II. Arguments of the Parties

### A. Defendants Dr. Weil, Dr. Krisher & Mr. Stanley

Defendants argue that plaintiff's claims against defendants in their official capacities for money damages must be dismissed. The Eleventh Amendment bars a suit for money damages brought in federal court against a state, which includes state employees in their official capacities, unless the state has waived its sovereign immunity and consented to be sued or Congress has explicitly abrogated the state's immunity in the statutory text. As a result, defendants maintain that this Court lacks subject matter jurisdiction over these claims.

Defendants also argue that plaintiff's claims against defendants in their official capacities for injunctive, declaratory and/or equitable relief should be dismissed because plaintiff cannot obtain a judgment in his favor on or any of his claims.

Defendants further argue that Snead's claims must be dismissed because he has pursued state law claims in the Ohio Court of Claims concerning the same "acts or omissions" that form the bases or nexus of his claims against each defendant in this case. Defendants maintain that under *Leaman v. Ohio Department of Mental Retardation and & Development Disabilities*, 825 F.2d 946 (6th Cir. 1987), plaintiff has waived his claims in this case.

Plaintiff has filed four claims in the state courts of Ohio concerning some or all of the allegations in the amended complaint:

- *Robert A. Snead v. State of Ohio, et al.*, Case No. 2011-10410 (Ohio Ct. Claims filed August 18, 2011). Doc. 112-1, pageID 1070-1083. The following claims were pleaded: work injuries resulting in an inguinal hernia (Complaint, ¶¶ 2-4); re-injury to inguinal hernia during transportation to prison following surgery (Complaint, ¶¶ 5-6); work injury to right knee (Complaint, ¶¶ 7-8); loss of teeth when required to work during extreme cold (Complaint, ¶ 9); harassment by Mr. Stanley from October through December 2010 (Complaint, ¶¶ 10-11); damage to Snead's stomach and esophagus due to medications prescribed by doctors in 2008-2009 (Complaint, ¶ 12); from November 2010 through July 2011, Dr. Weil, Health Care Administrator Stanforth, and the Collegial Review Board denied various tests and treatment with deliberate indifference to Snead's serious medical needs (Complaint, ¶¶ 12-16). On December 16, 2011, the Court of Claims granted the State's motion for

10

judgment on the pleadings as to Snead's deliberate indifference to serious medical needs claim for failure to state a claim for relief based on his failure to provide an affidavit of merit required by Ohio Civ. Rule 10(D)(2). Doc. 112-2, pageID 1087-88. The deliberate indifference claim was dismissed without prejudice. *Id.*, pageID 1089. Snead's claims for retaliation, harassment, and intentional infliction of emotional distress were dismissed on th merits. *Id.* Following a trial on the claims for injuries Snead allegedly received performing prison work assignments, a magistrate rendered a decision on the merits for the State. Doc. 112-3, pageID 1091-97. On October 10, 2012, judgment was entered dismissing those claims on the merits. Doc. 112-4, pageID 1098-99.

- *Robert A. Snead v. Doctor David Charles Weil*, Case No. CVA 20120154 (Madison Cty. C.P.Ct. Filed May 25, 2012), Doc. 112-7, pageID 1104-15. The complaint pleaded that Dr. Weil refused to allow an endoscopic examination (Complaint, ¶5); misdiagnosed and mistreated Snead's gastrointestinal problems; misdiagnosed and mistreated his vascular headaches (Complaint, ¶6); intentionally refused Snead's required medications (Prilosec and Zantac) (Complaint, ¶7); failed to provide proper care for his post-surgical injuries and complications from June 20, 2011 through February 2012 (Complaint, ¶8); in June 2011, failed to respond to emergency calls for him to treat an orange to softball size protrusion from the surgical site (Complaint, ¶9); and failed to

11

provide ness medical care starting on or about June 30, 2012 (Complaint, ¶10); and intentionally denied Snead all medical treatment for the 90 day period following his August 2011 surgery (Complaint, ¶11). On September 18, 2012, the Common Pleas Court entered an order stating that plaintiff had voluntarily dismissed his complaint. Doc. 112-8, pageID 1115.

- *Robert A. Snead v. Ohio Dep't of Rehabilitation and Correction, et al.*, Case No. 2013-00022 (Ohio Ct. Claims filed January 10, 2013), Doc. 112-9, pageID 1116-27. The complaint pleaded the same medical malpractice claims against Dr. David Charles Weil that were pleaded in the Madison, County Court of Common Pleas Court lawsuit. A May 2012 amended complaint re-pleaded those claims Doc. 112-10, pageID 1127-37. On July 11, 2013, the Court of Claims dismissed the action without prejudice for failing to file the affidavit required by Ohio Civ. Rule 10(D)(2).

- *Robert A. Snead v. Ohio Dep't of Rehabilitation and Correction*, Case No. 2013-00250 (Ohio Ct. Claims filed April 29, 2013), Doc. 112-12, pageID 1140-57. The complaint pleaded claims for medical negligence. It relied on similar facts to those pleaded in Case No. 2011-10410. Complaint, ¶ 6, Doc. 112-12, pageID 1142. The complaint pleaded that from late 2009 through August 27, 2010, Snead was prescribed Glucosamine, derived from shellfish which he was known to be allergic to, causing him tortuous esophagus, chronic gastritis, a gastric mucus abnormality, upper alimentary tract abnormality, and a

disorder of the stomach and duodenum. *Id.*, ¶¶ 7-13. On April 28, 2014, the

Clerk of Court issued a decision finding that Snead had failed to prove that he

sustained personal injury caused by negligence. Doc. 112-13, pageID 1157-61.

Judgment was entered for defendant. *Id.*, pageID 1162.

The State of Ohio has waived its Eleventh Amendment immunity by permitting

suit in the Ohio Court of Claims. *See* Ohio Rev. Code § 2743.01 *et seq.* Defendants argue

that this statutory scheme permits a person to pursue civil actions against the State of

Ohio for claims based on state law in the Ohio Court of Claims. Filing in the Ohio Court

of Claims, however, waives any and all other causes of action based upon the same "act

or omission" that forms the basis or bases of the state law claims brought in the Ohio

Court of Claims. Defendants argue that the waiver provided by section 2743.02 of the

Ohio Revised Code precludes federal actions brought pursuant to 42 U.S.C. § 1983.

Defendants argue that plaintiffs claims against Dr. Weil are barred under *Leaman*.

Defendant Unit Manager Stanley argues that paragraphs 10 and 11 of the

complaint filed in  *Robert A. Snead v. State of Ohio, et al.*, Case No. 2011-10410, Doc. 112-1,

pageID 1073-74, bars suit against him.

Defendants further argue that even if the court were to find that plaintiff's Eighth

Amendment claims were not waived by his Court of Claims lawsuits, he has not offered

any evidence that any defendant was deliberately indifferent to a serious medical need.

The Eighth Amendment forbids prison officials from "unnecessarily and wantonly

inflicting pain" on an inmate by acting with "deliberate indifference" toward the

13

inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To demonstrate an Eighth Amendment deprivation, a prisoner must show that a prison official acted with deliberate indifference to his serious medical needs. There is both an objective and a subjective component to a cruel and unusual punishment claim. *Quigley v. Thai,* 707 F.3d 675, 681 (6th Cir. 2013); *Scott v. Ambani,* 577 F.3d 642, 648 (6th Cir. 2009). The objective component requires a plaintiff to demonstrate that the medical need was "sufficiently serious." *Brennan v. Farmer,* 511 U.S. 825, 834 (1994). That is, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008).

To meet the subjective component, a complaint must plead "facts which show that the prison official had a 'sufficiently culpable state of mind.' [*Brennan v.*] *Farmer,* 511 U.S. [825], 834 [(1994)]; *Comstock* [*v. McCrary,* 273 F.3d 693], 834 [(6th Cir. 2001)."] Prison officials are liable only if they know of and disregard "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Defendants maintain that plaintiff has offered no evidence to support either the objective or the subjective element of an Eighth Amendment claim. Further, he has been provided with a

14

significant amount of medical treatment. Finally, he has failed to identify any significant injury he has sustained as a result of defendants' alleged deliberate indifference to his serious medical needs.

Defendant Krisher has submitted an affidavit asserting that he was not involved in the Collegial Review Process for the medical treatment put at issue by the amended complaint. May 5, 2014 Affidavit of Dr. Gary E. Krisher, Doc. 112-15, ¶ 12, pageID 1172. Defendant Eddy has submitted an affidavit stating that six of the medical complaints did not come before the Collegial Review Board. Of the medical issued presented to the Board, the requests for treatment were presented to a panel of ODRC medial providers and after due deliberation the Board adopted an alternative plan of treatment.

Dr. Eddy's affidavit describes the Collegial Review Board process. The Board was began operation in February 2011. It reviews requests for medical services provided outside the prison. Eddy Aff., ¶ 10, pageID 1166. Its purpose is to "ensure that ODRC is providing medically necessary, appropriate and evidence based medical care to its inmate-patients. *Id*., ¶ 12. There were five occasions on which Snead's requests for medical care were reviewed by the Board. *Id*., ¶ 16, pageID 1167.

Dr. Eddy states that Snead's hernia surgery was approved in April 2011 by the Collegial Review Board, and that the Board similarly approved his esophagogastro-duodenoscopy (EDG) in March 2012. *Id*., ¶ 6, pageID 1165. Plaintiff's requests for nasally inhaled steroids, were not presented to the Collegial Review Board. *Id*., ¶¶ 17, pageID 1167-68.  The request for an MRI of the left hip was denied because, although

15

the August 2012 x-ray reveal a heterogeneous density in the subrochanteric region, the only clinical history was pain and there was no earlier x-ray for comparison, he had surgery for the congenital deformity during childhood and there was no acute problem. The Board adopted the medical plan of obtaining an earlier x-ray for comparison and assessing the patient's function. *Id.*, ¶ 18. The Collegial Review Board did not delay Snead's hernia surgery. The OSU general surgery clinic evaluated Snead for hernia repair on November 1, 2010 and again on January 10, 2011. On January 10, the clinic recommended that he be seen for pre-operation evaluation. On April 4, 2011, the Collegial Review Board determined that surgery should proceed as recommended. *Id.*, ¶ 19.

In April 2012, there was a request for orthotic evaluation of Snead for a limb length discrepancy. In May 2012, the Collegial Review Board granted the request. *Id.*, ¶ 20. The clinic provider recommended a shoe with a one and three-eighths heel and sole elevation on the left side. On August 20, 2012, there was a second request for an orthotic evaluation because the cost of new shoes was too high. The Collegial Review Board recommended that the prison medical providers determine whether the regular prisoner shoes and boots could be modified and substituted for an orthotic shoe. On March 31, 2014, there was another request for orthotic evaluation that was granted on April 3, 2014.

On March 15, 2012, there was a request for a general surgical consult to evaluate Snead's post-hernia surgery discomfort. On March 29, 2012, the Collegial Review Board

16

denied the request because there was no acute surgical problem, but recommended that an ultrasound be obtained to see if a hernia had recurred. *Id.*, ¶ 21, pageID 1168-69. During the consideration of each of these requests, the expense or cost of the procedure was not considered.

Finally, Dr. Eddy's affidavit states that Dr. Gary Krisher is not a member of the Collegial Review Board. He did substitute for Dr. Eddy during August 2012. *Id.*, ¶ 11.

> **B.**     **Plaintiff Robert A. Snead**

Plaintiff argues that *Leaman* is not applicable to the equitable and prospective relief that he seeks and relies on section 2743.03(A)(2) for this proposition. Plaintiff also relies on *Turker v. Ohio Dept. Of Rehabilitation and Corrections, et al.*, 157 F.3d 453 (6th Cir. 1998) and maintains that his claims for equitable and prospective relief were not waived by his filing in the Ohio Court of Claims.

Plaintiff also argues that because he alleges ongoing violations of federal law and seeks prospective relief. Because he seeks the future provision of medical care, he is seeking prospective relief.

Plaintiff also maintains that the Ohio Court of Claims lacked jurisdiction to hear certain claims, and therefore those claims are not barred from consideration by this Court because they were not waived. Plaintiff failed to provide an affidavit concerning his medical claims as required by Ohio Rule of Civil Procedure 10(D)(2). As a result, the Court of claims dismissed this claim for lack of jurisdiction. Plaintiff contends that section 2743.02(A) contemplates a timely filing of a proper complaint and that if the

complaint is dismissed for either lack of jurisdiction or because it is barred by the applicable statute of limitations, the waiver is not effective even though a complaint was filed. Because plaintiff was unsuccessful in his efforts to file a claim in the Ohio Court of Claims, he maintains his claim has not waived.

### III. Discussion

To the extent that plaintiff seeks money damages from defendants in their official capacity, his claims must be dismissed. Plaintiff's claims for money damages against defendants in their official capacity fail because his claims are barred by the Eleventh Amendment. *Thiokol Corp. v. Dep't of Treas.*, 987 F.2d 376, 381 (6th Cir. 1993) The Eleventh Amendment prohibits a federal court from hearing a damages claim against a state unless Congress has explicitly abrogated a state's immunity to suit on the face of a statute or where the state itself has consented to suit. Congress did not abrogate state immunity when it enacted 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65-66 (1989); *Wolfel v. Morris*, 972 F.2d 712, 718 (6th Cir. 1992)("Congress did not disturb the states' eleventh amendment immunity when it passed § 1983.").

Plaintiff's claims for money damages against defendants in their individual capacities must be dismissed under *Leaman v. Ohio Department of Mental Retardation & Development Disabilities, et al.*, 825 F.2d 946 (6th Cir. 1987). Under Ohio Revised Code § 2743.02(A)(1), federal claims against state officials are barred where claims based on the same acts or omissions are raised in the Ohio Court of Claims:

> [F]iling a civil action in the court of claims results in a complete waiver of
> any cause of action, based on the same act or omission, that the filing
> party has against any officer or employee, as defined in section 109.36 of
> the Revised Code. The waiver shall be void if the court determines that
> the act or omission was manifestly outside the scope of the officer's or
> employee's office or employment or that the officer or employee acted
> with malicious purpose, in bad faith, or in a wanton or reckless manner.

Ohio Rev. Code  § 2743.02(a). Filing a claim in the Court of Claims results in a complete

waiver of any federal cause of action, including claims under Section 1983 arising out of

the same act or omission. *Leaman*, 825 F.2d at 951-52.

Plaintiff's August 18, 2011 complaint filed in Ohio Court of Claims asserted a

claim based on the ODRC's failure to protect inmates against unreasonable risks of

physical harm associated with the performance of their work duties. The complaint

alleged that Mr. Stanley harassed plaintiff for his refusal to add the second porter

position to Snead's job. Snead suffered extreme anxiety and depression as a result of

Mr. Stanley's harassment.  Mr. Stanely improperly reclassified plaintiff after he was

assigned to light duty in compliance with the medical department's orders. Mr. Stanely

improperly referenced Snead's complaints against Stanley. Doc. 112-1 at PageID# 1075.

The complaint alleges that Mr. Stanley vindictively assigned plaintiff to hazardous duty

in the kitchen after his work restrictions expired in retaliation for plaintiff' s complaints.

Ms. Workman, Ms. Parish and the Chief Inspector's office refused to intervene even

though Stanley's actions were clearly vindictive.  *Id.* at PageID# 1076. These allegations

are similar and arise out of the same acts or omissions as those in plaintiff's amended

complaint at ¶¶ 104-113.  Doc. 50 at PageID# 541-42. As a result, plaintiff's section 1983

19

claim based on these allegations against defendant Stanley has been waived under

*Leaman.*

Plaintiff argues that because of the Ohio Court of Claims lacked jurisdiction over

his medicals claims, those claims were not waived. Plaintiff argues that his claim for

deliberate indifference to his serious medical needs was dismissed for lack of subject

matter jurisdiction by the Court of Claims. Snead argues that because he failed to attach

an affidavit of merit for his medical claim as required by Rule 10(D)(2) of the Ohio

Rules of Civil Procedure, the Court of Claims did not have jurisdiction to hear his claim.

Plaintiff relies on *Smith v. Stempel*, 65 Ohio App. 2d. 36 (Ohio App. 10th Dist. 1979),

which held that when a complaint filed in the Court of Claims is dismissed for either

want of jurisdiction or because it was filed outside the statute of limitations, the waiver

is not effective even though a complaint was filed. According to *Smith*, Ohio Revised

Code § 2743.02(A) "contemplates the timely filing of a proper complaint." *Id.* at 41.

Defendants maintain, however, that plaintiff's complaint was not dismissed on the basis

of either of these grounds. Instead, the judgment entry indicates that the dismissal was

for failure to state a claim.

In Ohio courts, complaints alleging medical malpractice must be accompanied

by an affidavit of merit. Ohio Civ. R. 10(D)(2). Defendants argue that plaintiff's

wrongful denial of medical care claims in the Ohio Court of Claims were premised on

medical malpractice and, consequently, the Court of Claims dismissed them for failing

to comply with Rule 10(D)(2). In *Fletcher v. University Hospital*, 120 Ohio St.3d 168 (2008),

20

the Ohio Supreme Court ruled that any complaint asserting medical malpractice must contain a certificate or merit to establish the adequacy of the claim or be dismissed without prejudice. Section 2305.113 of the Ohio Revised Code defines a "medical claim" as

> any claim that is asserted in any civil action against a physician, podiatrist, hospital, home, or residential facility, against any employee or agent of a physician, podiatrist, hospital, home, or residential facility, or against a licensed practical nurse, registered nurse, advanced practice nurse, physical therapist, physician assistant, emergency medical technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic, and that arises out of the medical diagnosis, care, or treatment of any person. "Medical claim" includes the following:
>
> (a) Derivative claims for relief that arise from the medical diagnosis, care, or treatment of a person;
>
> (b) Claims that arise out of the medical diagnosis, care, or treatment of any person and to which either of the following applies:
>
> (I) The claim results from acts or omissions in providing medical care.
>
> (ii) The claim results from the hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care, or treatment.
>
> (c) Claims that arise out of the medical diagnosis, care, or treatment of any person and that are brought under section 3721.17 of the Revised Code.

Ohio Rev. Code § 2305.113(E)(3).  Here, plaintiff failed to file an affidavit of merit in the Ohio Court of Claims.

The first complaint filed by Snead in the Ohio Court of Claims, *Robert A. Snead v. State of Ohio, et al.*, Case No. 2011-10410, above, includes the following allegations:

21

CLAIM NUMBER SIX: STOMACH AND ESOPHAGEAL DAMAGE DUE TO MEDICATIONS

¶12: During late 2008 through 2009, Dr. Neoga (Dr. Ike) at Madison Correctional, prescribed Indomethacin to Snead. While Dr. Ike also prescribed prilosec along with it to counter the side effects. Snead would put forth that this action in and of itself shows negligence. For Dr. Ike knew that the medications would hurt Snead's stomach, yet he prescribed it anyway. Snead has constant stomach pain and acid reflux as a result. While the State has issued Snead Prilosex and Zantax (Snead was told to purchase antacids himself in the commissary, in addition to the issued meds), this merely masks the problems and not very well. There are corrective procedures and medications available, yet Snead has been denied these by the State and Dr. Weil. Dr. Levine ordered a camera to be used to look at the damage and see what can be done, Dr. Weil has refused to order the procedure. As such the full extent of Snead's injuries is unknown to date. The solution of leaving Snead as he is with the side effects of the medications intolerable and abusive.

CLAIM NUMBER SEVEN: DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS AND INTENTIONAL DEALYS IN TREATMENTS:

¶13: Snead has sought out testing and treatment of his various injuries from the very time of their occurrences, yet he has been highly unsuccessful in receiving proper and timely care. Snead was ordered an MRI for his right knee and it was denied. The reason he was given, that Ma.C.I. was not treating it so it couldn't warrant an MRI. Snead was ordered and EGC . . . . This was refused by Dr. Weil even though Snead protested. The test had been ordered by Dr. Levine after a consultation with Snead. Snead was denied a pre-scheduled follow-up examination with the hernia surgeon, Dr. Lindsey, the visit was intentionally cancelled by Dr. Weil after he examined Snead and knew he was experiencing severe post-surgical complications due to the improper transport back to Ma.C.I. Snead was approved for Hernia surgery in November of 2010, yet he did not have surgery until the Chief Inspector's Officer intervened . . . . The surgery was finally performed on 6-15-2011.

¶14: The delay in Snead's surgery was intentional, due to the efforts of the Governor of Ohio, His administration, the Management of the Ohio Dept. of Rehabilitation and Corrections and the Staff at the Madison Correctional facility itself. The unnecessary delays were caused by several things, (1). The Governor and his Administration's attempts to renegotiate the fees of services with Ohio State University Hospital, (2). Unnecessary approval of the collegiate board a full 5 months after Snead had been

approved for surgery, (3). The Failure to actually schedule the surgery by whomever is in charge of the actual scheduling, whether it is the Staff at the corrections Medical Center or Ma.C.I. When Snead complained . . . he was given four different answers as to what was happening . . . . All of these intentional delays [were] merely to save the State money at the expense of Snead's health, safety and well being.

¶15: Snead went to Medical nearly a dozen times in the two weeks following his hernia surgery and subsequent improper transport, begging for help. Snead was told repeatedly that it was normal when clearly it was and still is not. Snead's post-operative and improper transport issues haves till not been fully addressed some 6 weeks later. Snead's pain medications, while had the protrusion the size of a softball, went intentionally unwritten by Dr. Weil. Snead saw the Dr. On or about June 30th when he said he ordered an ultrasound and would rewrite the medications as Snead was clearly having problems and in severe pain, none were written. Snead returned to medical on 7-1-2011 and spoke with a Nurse, she said she would put the order in front of the Dr. After she examined Snead, still no meds. On 7-3-2-11 Snead returned to medical and saw Nurse Wolfe who put him in to see the Dr. On 7-5-2011, this appointment was cancelled. Snead was again scheduled to see the Dr. On 7-7-2011, still he saw no Dr. On or about 7-21-2011 Snead finally saw the Dr. His pain meds were written and he was given the results of the ultrasound, which Dr. Weil held only shows a blood clot and not a rerupture of the hernia. When Snead confronted Dr. Weil with the bulge of knotted muscles at the surgical site, Dr. Weil stated again that it was a normal part of the surgery, to which Snead stated "It was not like this after surgery, before transport". The Dr. stated to the effect that most of the problems you are having are most likely complications from the injuries sustained during transport.

¶16: Had Snead received medical attention on any of those trips to medical upon his return to Ma.C.I. his current injuries and level of pain and suffering may have been diminished somewhat. Two separate nurses (Wolfe and Root) examined Snead and immediately called Dr. Weil. When Root called Snead was told not to come back to medical unless he couldn't get to chow, that he would be seen the next week. Snead saw Nurse Wolfe when he was "pulled in" by Officer Follrod, to be examined. As Officer Follrod could tell by Snead's gait and demeanor that he was in distress. The answer again was you will be seen later. When Snead was finally seen by Dr. Weil, he stated to the effect "has it always been like this" to which

> Snead said "no its getting worse by the day, why do you think your
> nurses have been calling you".  Again the Dr. gave Snead no immediate
> medical attention, but ordered an ultrasound which took 3 weeks for the
> results. Had Snead had an immediate ultrasound, at the very least the
> pressure could have been released from the protrusion. Approximately 3
> months ago, one of our dogs was injured at Ma.C.I. 3 nurses rushed to the
> yard, scooped the dog up and out the front gates, to heroically save the
> dogs life. Does Snead not warrant at the very least the same level of care.

Doc. 112-1 at PageID 1076-79. On December 16, 2011, the Court of Claims issued an

order dismissing plaintiff's claim of "deliberate indifference to serious medical needs

and intentional delays in treatment"by Stanforth and Weil pursuant to Rule 10(D)(2).

*See* doc. 112-2.

A dismissal pursuant to Rule 10(D)(2) is without prejudice. *Fletcher v. Univ.*

*Hospital of Cleveland*, 120 Ohio St. 3d, 167 (2008). Because plaintiff's claim was dismissed

without prejudice, application of the *Leaman* doctrine is not appropriate.  "It is generally

accepted that a dismissal without prejudice leaves the situation the same as if the suit

had never been brought. . . . " *Wilson v. Grumman Ohio Corp.*, 815 F.2d 26, 27 (6th Cir.

1987).  Under *Smith v. Stempel*, 65 Ohio App. 2d. 36 (Ohio App. 10th Dist. 1979), a

waiver is not considered effective if the complaint is dismissed for want of jurisdiction

or because the claim was untimely even though a complaint was filed. The statute

"contemplates the filing of a complaint with respect to a claim which can be effectively

asserted against the state at the time of such filing." *Id.* As a result, plaintiff's claim

based on deliberate indifference to his serious medical need in violation of the Eighth

Amendment is not barred by *Leaman.*

## IV.    Conclusion

For the reasons stated above, defendants Dr. Weil, Dr. Eddy, Dr. Krisher, and Mr. Stanley's May 5, 2014 motion for summary judgment (doc. 112) is GRANTED in part and DENIED in part. The Magistrate Judge RECOMMENDS that plaintiff's claims against Mr. Stanley be DISMISSED and that plaintiff's claims against Drs. Weil, Eddy, and Krisher alleging that they were deliberately indifferent to his serous medical needs in violation of the Eighth Amendment continue.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005); *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir. 1995).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991).

s/Mark R. Abel
United States Magistrate Judge
