UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ROBERT A. SNEAD,
      Plaintiff,
v.

GARY C. MOHR, et al.,
      Defendants.

Civil Action 2:12-cv-739
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter is before the Court on Plaintiff Robert Snead's Motion for Reconsideration (ECF No. 94) of the Magistrate Judge's March 11, 2014 Order (ECF No. 91), Snead's Objections (ECF No. 129) to the Magistrate Judge's October 7, 2014 Report and Recommendation (ECF No. 127), and Defendants' Objections (ECF No. 144) to the Magistrate Judge's January 13, 2014 Report and Recommendation (ECF No. 142). For the reasons that follow, the Court **DENIES** Snead's Motion for Reconsideration (ECF NO. 94), **OVERRULES** Snead's Objections (ECF No. 129), **ADOPTS** the Magistrate Judge's March 11, 2014 Order (ECF No. 91) and October 7, 2014 Report and Recommendation (ECF No. 127), and **GRANTS** Defendants' Motion for Judgment on the Pleadings (ECF No. 101). The Court **SUSTAINS** Defendants' Objections (ECF No. 144), **OVERRULES** the Magistrate Judge's January 13, 2015 Report and Recommendation (ECF No. 142), and **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 112).

## I. BACKGROUND

Snead, a state prisoner, brought suit against doctors, nurses, and administrators of the Ohio Department of Rehabilitation and Correction. He alleges claims under the Eighth and Fourteenth Amendments for denial of adequate medical care and unsafe medical transportation;

1

and a claim under the First and Fourteenth Amendments based on retaliation for internal grievances he filed. His complaint details a host of medical issues: pain from the surgical repair of an inguinal hernia; congenital defects in his left hip, exacerbated by his hernia operation; a lingering right-knee injury; chronic gastritis, which has "cause[d] further injuries" to his esophagus, lungs, and throat; a chronic sinus infection; "debilitating headaches or migraines"; "[c]omplications from [all of the] medications" he currently takes; and congenital defects in his left femur. (*See* Am. Compl. ¶ 27; ECF No. 50.)

Several motions are at issue here. First, Snead moves for reconsideration (ECF No. 94) of the Magistrate Judge's Order (ECF No. 91) denying his Motion for an Additional Number of Interrogatories (ECF No. 78); Motion to Compel (ECF No. 83); Motion to File a Supplemental Complaint (ECF No. 84); Motion for Default Judgment (ECF No. 86); and granting his Motion for Extension of Time with Which to Conduct Discovery and Request Clarification (ECF No. 79). Snead also Objects (ECF No. 129) to the Magistrate Judge's Report and Recommendation (ECF No. 127) that recommends granting Defendants' Motion for Judgment on the Pleadings (ECF No. 101) as to eight of the thirteen defendants. And the remaining Defendants Object (ECF No. 144) to the Magistrate Judge's Report and Recommendation (ECF No. 142) that recommended granting in part and denying in part their motion for summary judgment (ECF No. 112).

## II. STANDARD

This Court reviews objections to the Magistrate's Judge's decision on a nondispositive motion under 28 U.S.C. § 636(b)(1)(A). Under that statute, the district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the

2

Magistrate Judge's order found to be clearly erroneous or contrary to law. *See id.*; Fed. R. Civ. P. 72(a); *Vogel v. U.S. Office Prod. Co.*, 258 F.3d 509, 515 (6th Cir. 2001).

When objections are received to a report and recommendation on a dispositive matter, the District Judge "must determine de novo any part of the Magistrate Judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). After review, the District Judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.; see also* 28 U.S.C. § 636(b)(1)(C).

The Court also notes that a pro se litigant, like Snead, should have his pleadings construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner,* 404 U.S. 519, 520–21 (1972); *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

### III. VARIOUS MOTIONS

The Court first takes up Snead's Motion to Reconsider (ECF No. 94) the Magistrate Judge's March 11, 2014 Order. Snead specifically objects to the resolution of three of the motions discussed in that order.[1]

First, Snead asserts that the Magistrate Judge did not fully resolve his Motion for Extension of Time with Which to Conduct Discovery and Request for Clarification (ECF No. 79). The Magistrate Judge, in granting the motion, specifically held that "Plaintiff should be permitted to inspect those documents he seeks prior to requesting which documents should be copied." (Order at 2; ECF No. 91.) Snead argues that the Magistrate Judge did "not address the

---

[1] Snead mentions the denial of his Motion to Compel (ECF No. 83) and clarifies that the requests for discovery go to the defendants' state of mind, and not irrelevant information as characterized by the Magistrate Judge. But "[r]egardless," Snead maintains, "the main information sought has been largely found through other avenues[.]" (Mot. at 2; ECF No. 94.) Thus, the Court does not view Snead as objecting to the denial of this motion.

3

time extension which would also affect the ability to file the supplemental complaint." (Mot. Reconsider at 4.) The Court disagrees, as the Magistrate Judge, in denying the Motion to File a Supplemental Complaint, states that "the deadline for completing discovery has passed." (Order at 5.)

Second, Snead challenges the denial of his Motion to File a Supplemental Complaint (ECF No. 84). The Magistrate Judge denied the request to add three more defendants because the discovery deadline had passed and the deadline for filing dispositive motions was rapidly approaching. (Order at 5.) Now, Snead asserts that the three defendants that he sought to add "are already named as they took office as successors of the defendants" and that he "merely seeks to bring his claims (all the same as the original complaint) through the current date as the defendants continue to deny even basic medical care." (Mot. Reconsider at 3.) But Snead alleges, *inter alia*, claims for deliberate indifference and retaliation. Thus, the Court agrees with the Magistrate Judge that additional discovery and briefing to account for these defendants would be necessary and would seriously impact the adjudication of this case.

Snead questions the Magistrate Judge's reasoning in citing the discovery deadline. Specifically, Snead notes that earlier in the Order, the Magistrate Judge directed Defendants to allow him to inspect documents before paying to copy them. (Mot. Reconsider at 3.) But the Motion granted by the Magistrate Judge involved discovery-related issues that were raised before the deadline to do so passed. (*See* Motion for Extension at 2; ECF No. 79 ("[S]ave the Court's appointment of an Officer to conduct depositions by written questions . . . I have no further discovery requests, save the completion of interrogatories and requests for the production of documents already submitted and mainly objected to."); *see also* Motion for Court Officer to Record Depositions; ECF No. 66 (requesting depositions before discovery deadline lapsed);

4

Order denying Motion for Discovery; ECF No. 80 (directing parties to stipulate as to how the deposition on written questions will be administered).) Thus, the Magistrate Judge sensibly allowed the parties to resolve them. But this does not show any error in denying the addition of three defendants after the discovery deadline passed.

Last, Snead challenges the denial of his Motion for Default Judgment (ECF No. 86) on the grounds that the defendants did not comply with the Magistrate Judge's November 1, 2013 Order requiring the production of certain digital evidence. But a subsequent Order by the Magistrate Judge on February 11, 2014 directed Snead to communicate with defense counsel to ensure that he had the proper means to view this evidence. If he had the ability to view these digital records, then the defendants were ordered to provide him the evidence. (Order at 1; ECF No. 82.) Snead apparently sent a letter to the defendants stating that he has the ability to view the evidence on March 10, 2014. (*See* Letter at 2; ECF No. 94-1.) But this letter was sent nearly a month *after* he filed his motion for default judgment and the day before the Magistrate Judge denied the motion.[2] The Court finds no error in the Magistrate Judge's decision.[3]

---

[2] Although Snead states in his March 18, 2014 Motion for Reconsideration that the defendants failed to reply to this letter in the eight days since it was written, it is not clear to the Court if and when the defendants received the letter. In any event, any such delay would be minor. *See Mills v. Lafler*, No. 2:07-CV-13285, 2009 WL 1664472, at *2 (E.D. Mich. June 15, 2009) ("Delay in responding alone is not a sufficient basis for entry of default judgment, particularly where any delay was not egregious and the plaintiff was not prejudiced by the delay in his ability to prosecute the action.").

[3] Snead also alludes to "the hard copy" that "was ordered surrendered November 1, 2013, and has not been complied with." (Mot. Reconsider. at 4-5.) He further cites defendants' "violation" of discovery rules by forcing him to pay before he could view discovery. (*Id.* at 5.) But review of the November 1, 2013 Order reveals no order directing a second, "hard copy" be provided. (*See* Order; ECF No. 61.) And, the Magistrate Judge clarified in the March 11, 2014 Order that the defendants are to allow Snead to inspect documents without first paying. In any event, Snead does not explain how he was prejudiced. *See* 10A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2685 (3d ed.) (noting that the decision to grant a default judgment falls within the district court's discretion and a factor often considered is whether the

## IV. MOTION FOR JUDGMENT ON THE PLEADINGS

Next, the Court turns to Snead's Objections to the Magistrate Judge Report and Recommendation that recommended granting defendants' Motion for Judgment on the Pleadings and dismissing the claims against defendants John DesMarais, Stuart Hudson, K. Layne, D. McGonigal, Gary C. Mohr, Jondrea Parrish, Donald Root, Karen Stanforth.

Snead, alleging deliberate indifference to his serious medical needs, asserted that Collegial Review Board ("CRB") denied or delayed his medical treatment. He placed responsibility for the CRB on defendants Mohr, Hudson, DesMarais, Eddy, Krisher, and Stanforth. The Magistrate Judge rejected this claim because Snead alleged that cost-cutting concerns, not deliberate indifference, lead to the CRB's actions.

Standing by his assertion that the defendants "deny care solely due to its cost," Snead presses that instituting "the CRB solely to save costs by the denial, delay, limitation, offer of less than efficacious, inefficacious and non-efficacious medical care does state a claim." (Obj. at 2-3.) True, the "denial of medical care, when based on non-medical factors, *may* violate the Eighth Amendment." *Winslow v. Prison Health Servs.*, 406 F. App'x 671, 674 (3d Cir. 2011) (emphasis added). But cost-cutting alone is not a constitutional violation. Rather, the "plaintiff must establish that a defendant performed a medical procedure for the purposes of cost savings *with knowledge that the procedure was ineffective.*" *Casanova v. Michigan Dep't of Corr.*, No. 10-13950, 2011 WL 4374457, at *3 (E.D. Mich. Sept. 20, 2011) (rejecting argument where plaintiff alleged the only reason for lack of treatment was cost and there was no allegation that defendants knew that the treatment was an ineffective alternative). In other words, Snead must allege not

---

plaintiff has been "substantially prejudiced by the delay involved" and "how harsh an effect a default judgment might have").

only a sufficiently serious condition, but also that the "defendant was aware of facts from which the inference could be drawn that a substantial risk of harm would exist if needed care were not provided, that the defendant actually drew the inference, and that the defendant acted in disregard of that risk." *Amick v. Ohio Dep't of Rehab. & Correction*, 521 F. App'x 354, 358 (6th Cir. 2013). Though Snead alleges that the CRB denied him medical care, he offers no allegation that the CRB was aware of a substantial risk of harm to him and that it disregarded that risk.[4] *See Simonds v. Delaware Cnty.*, No. CIV.A. 13-7565, 2014 WL 3030435, at *5 (E.D. Pa. July 1, 2014) ("[P]laintiff's allegation that Delaware County had a policy or custom of denying or delaying medical treatment to inmates based on cost-savings[] is insufficient to allege an unconstitutional policy or custom and cannot withstand defendant'[s] motion to dismiss.")

Nevertheless, Snead asserts that the Magistrate Judge did not adhere to *Spar v. Mohr*, No. 2:14-cv-0546, 2014 WL 2813304 (S.D. Oh. June 23, 2014), which held—on initial screening under 28 U.S.C. § 1915A—that the implementation and operation of the CRB can state a claim for relief. In *Spar*, the Magistrate Judge found sufficient allegations against defendants who "*knowingly* acted to deny" the plaintiff "needed medical care." *Spar*, 2014 WL 2813304, at *2 (emphasis added). Here, as stated above, Snead alleges that the CRB was motivated "solely" by cost savings and does not allege that the CRB knew of the alleged severity of his conditions or that they knowingly denied him effective medical care.

Snead also argues that he had "obvious medical problems, e.g. the need [for] a hip replacement." (Obj. at 4.) As such, leaving him untreated "is barbaric by any standard." (Obj. at 5). Snead's objections, however, do not identify who is to blame for this alleged neglect. And

---

[4] Snead also asserts that the Magistrate Judge did not address incidents where he is given "no medical care at all." (Obj. at 4.) For the reasons outlined above, these allegations do not state a claim under the Eighth Amendment.

the Amended Complaint similarly sheds little or no light on what defendants observed and should have known and done. (*See, e.g.*, Am. Compl. ¶¶ 76, 151 (alleging Nurse Layne "was required to perform a physical assessment of Snead" and that "even a lay person would be able to discern that Snead was in need of medical attention"); *id.* ¶ 140 (alleging that he met with Parrish and that "[d]uring this meeting, it was obvious even to a lay person that Snead was injured").

Two allegations warrant additional analysis. First, Snead had an alleged exchange where Nurse Root observed obvious symptoms of Hematoma resulting from a surgery. But the nurse informed a doctor of Snead's condition, who "instructed" Root to send the inmate back to his housing unit. (Am. Compl. ¶ 152.) Though Snead alleges that that the nurse had the authority to override the doctor's orders, he alleges no factual support for such an unusual arrangement. Second, Snead alleges that Nurse Stanforth saw the "surgical site," (which Snead alleged months earlier had a softball size protrusion (*see* Am. Compl. ¶ 57)), commented that it looked "good," and stated that she would "do some online research about his problems and get back to him." (Am. Compl. ¶ 74.) The nurse, however, "[d]id no research" and "prevented Snead from seeing a [d]octor for any pain medication." (Am. Compl. ¶ 74.) But these allegations do not show that Stanforth knew Snead suffered from a serious medical conclusion, and his allegation of not being able to see a doctor lacks any detail. *See Gjokaj v. HSBC Mortgage Servs., Inc.*, No. 14-1964, 2015 WL 859551, at *2 (6th Cir. Feb. 27, 2015) (noting that that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Thus, the Court agrees with the Magistrate Judge that Snead's allegations lack sufficient detail to show deliberate indifference to a serious medical need.

Snead's last objection asserts that the Magistrate Judge did not address his claim that Nurse Layne retaliated against him for exercising his First Amendment rights. In his Amended Complaint, Snead alleges "3 distinct and separate incidents" where Nurse Layne "intentionally denied" him access to medical care "in retaliation for Snead's written complaints to her superiors." (*See* Am. Compl. ¶¶ 119-22.) She also allegedly told Snead that he "would get more done if [he] were not so demanding." (*Id.* ¶ 76.) Again, these conclusory statements do not state a plausible claim for retaliation or deliberate indifference.

The Court therefore overrules Snead's objections, adopts the Magistrate Judge's Report and Recommendation, and grants the defendants motion for judgment on the pleadings.

## V. MOTION FOR SUMMARY JUDGMENT

Last, Defendants Drs. David Weil, Andrew Eddy, and Gary Krisher object to the Magistrate Judge's January 13, 2015 Report and Recommendation that recommended granting in part and denying in part the defendants' summary judgment motion. Citing Eleventh Amendment immunity, the Magistrate Judge recommended granting summary judgment on the claims for money damages against the defendants in their respective official capacities.[5] (*See*

---

[5] Defendants highlight in their objections that the Magistrate Judge Abel misspoke earlier in the Report and Recommendation when Magistrate Judge Abel stated that "Ohio has waived its Eleventh Amendment immunity by permitting suit in the Ohio Court of Claims." (R&R at 13.) *See Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 457 (6th Cir. 1998) (noting that Ohio has not waived Eleventh Amendment immunity). Rather, Ohio has waived its sovereign immunity from suit when it enacted the Ohio Court of Claims Act. *Leaman v. Ohio Dep't of Mental Retardation & Dev. Disabilities*, 825 F.2d 946, 951 (6th Cir. 1987); *cf. Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985) ("Although a State's general waiver of sovereign immunity may subject it to suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment.").

R&R at 18.) The claims for damages against the moving defendants in their personal capacity survived, however.[6]

The defendants assert that the Magistrate Judge erred in concluding that Snead's previously filed lawsuits in the Ohio Court of Claims did not waive his right to bring this suit under Ohio Rev. Code § 2743.02. That statute states:

> Filing a civil action in the Court of Claims results in a complete waiver of any cause of action, based on the same act or omission, which the filing party has against any officer or employee, as defined in Section 109.36 of the Revised Code. The waiver shall be void if the Court determines that the act or omission was manifestly outside the scope of the officer's or employee's office or employment or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

The Sixth Circuit has interpreted this provision to mean that filing in the Court of Claims not only "results in a complete waiver of any cognate cause of action against individual state officers or employees, [but also] the Ohio legislature clearly provided for waiver of federal causes of action, as well as causes of action based upon state law." *Leaman v. Ohio Dep't of Mental Retardation & Developmental Disabilities*, 825 F.2d 946, 951-52 (6th Cir. 1987) (en banc). As *Leaman* recognized, Ohio waives its sovereign immunity in exchange for the plaintiff giving up any cognate claims against state employees. *See id.* The Sixth Circuit has repeatedly applied *Leaman* in barring claims that were previously raised in the Court of Claims if they are based on the same act or omission. *Savage v. Gee*, 665 F.3d 732, 737-38 (6th Cir. 2012).

The defendants moved for summary judgment, pointing to Snead's previous filings in the Ohio Court of Claims. In August 2011, Snead sued the State of Ohio, the Department of Rehabilitation and Correction, and staff at Madison Correctional for negligence. (Compl. Case No. 2011-10410 at 1; ECF No. 112-1.) The Court of Claims dismissed Snead's claims without

---

[6] The Magistrate Judge recommended dismissing the claims against Defendant Stanley. (R&R at 19-20.) No party objects to this recommendation, and thus the Court will adopt it and dismisses Stanley from the case.

prejudice for failing to state a claim of medical negligence because he did not submit an affidavit of merit as required under Ohio Rule 10(D)(2). (*See* Case No. 2011-10410 Opn. at 5; ECF No. 112-2.) *See Fletcher v. Univ. Hosps. of Cleveland*, 897 N.E.2d 147, 151 (Ohio 2008) (holding proper response to failure to comply with Civ. R. 10(D)(2) is dismissal without prejudice). In January 2013, Snead again filed suit, alleging Dr. Weir committed medical malpractice. (Compl. Case No. 2013-00022 at 1; ECF No. 112-9.) He then filed an amended complaint in April 2013. (Am. Compl. Case No. 2013-00022 at 5; ECF No. 112-10.) Once more, the Court of Claims dismissed Snead's complaint without prejudice because he failed to state a claim due to not filing an affidavit of merit. (Order Case No. 2013-00022; ECF No. 112-11.) In April 2013, Snead filed a third cause of action in the Ohio Court of Claims, alleging medical negligence for the prescription of a medicine that caused an allergic reaction. (Compl. Case No. 2013-00250 at 3-4; ECF No. 112-12.) The Court of Claims dismissed the case because Snead did not offer the required expert testimony regarding the existence of the allergy or that he suffered personal injury as the result of any negligent act or omission by the defendant's personnel. (Opn. Case No. 2013-00250 at 4-5; ECF No. 112-13.) Here, the defendants press that all of the allegations in the Amended Complaint are "based on the same act[s] or omission[s]" litigated in the Court of Claims and thus are barred under *Leaman*. And as Snead acknowledges in his Amended Complaint, he "has filed actions which rely upon similar facts and/or evidence" in the Court of Claims. (Am. Compl. ¶ 25 (citing Case Nos. 2011-10410 & 2013-00022).)

The Magistrate Judge concluded that *Leaman* did not apply, pointing to *Smith v. Stempel*, 414 N.E.2d 445 (Ohio Ct. App. 1979). There, the court determined that the waiver was not effective when a complaint in the Ohio Court of Claims is dismissed for want of jurisdiction or because it was filed outside the statute of limitations. Neither exception applies to this case, as

the Court of Claims held that Snead failed to state a claim for his first two lawsuits and dismissed his claim on the merits in the third lawsuit. (Opn. Case No. 2011-10410 at 5; ECF No. 112-2; Opn. Case No. 2013-00022 at 1 ECF No. 112-11; Opn. Case No. 2013-00250 at 4-5 ECF No. 112-13.)

Nevertheless, the Magistrate Judge concluded that because Snead's claim was dismissed without prejudice, application of *Leaman* is inappropriate. (R&R at 24). But as the defendants point out in their objection, "the waiver set forth in Revised Code § 23743.02(A)(1) is complete upon *filing*." See *Johansen v. Banks*, No. 1:09-CV-802, 2010 WL 1839019, at *2 (S.D. Ohio Apr. 30, 2010). The dismissal of the claims without prejudice does not retroactively revoke Snead's waiver. *See id.* (holding that waiver cannot be retracted by voluntarily dismissing without prejudice the Court of Claims action); *Higginbotham v. Ohio Dep't of Mental Health*, 412 F. Supp. 2d 806, 812 (S.D. Ohio 2005) (rejecting argument that *Leaman* did not apply because plaintiff voluntarily dismissed Court of Claims action before filing in federal court); *see also Oehlers v. Ohio Dep't of Transp. Dist. 2*, No. 3:11 CV 6, 2011 WL 3021883, at *2 (N.D. Ohio July 22, 2011) ("[T]he waiver occurs upon the *filing* of a claim, and cannot be undone by dismissal of the cause of action.").

*Stempel* does not counsel otherwise. Snead offers no authority extending *Stempel* beyond its facts, and the Court knows of none. And while *Stempel* recognized that the statute "contemplates the filing of a complaint with respect to a claim which can be effectively asserted against the state at the time of such filing," 414 N.E.2d at 449, the claim here *can* be effectively asserted against the state, provided Snead submitted an affidavit of merit. The defects in the complaint excused by *Stempel*—lack of jurisdiction and statute of limitations—meant that a plaintiff could not effectively assert a claim against the state. As the *Stempel* court recognized, if

the waiver applied there, the plaintiff would have been "precluded from suing the state or these defendants." *Id.* Not so here, as Snead could re-file in the Court of Claims.

"At the very least," Snead presses, "the claims against Eddy and Krisher, from August 11th, 2001, forward for the continued operation of the Collegial Review Process, should be permitted to proceed" because these claims arose after he filed his first complaint in the Court of Claims. (Resp. Summ. J. at 5.) But Snead does not say what these claims are. And in that August 2011 complaint, Snead alleged that the delay in his hernia surgery was due, in part, to "[u]nnecessary approval of the collegiate [sic] board a full 5 months after Snead had been approved for surgery." (Compl. Case No. 2011-10410 at 8-9.) According to Snead, "[a]ll of the[] intentional delays [were] merely to save the State [m]oney at the expense of Snead's [h]ealth, safety and well being." (*Id.* at 9.) Snead's claims here against Dr. Eddy and Dr. Krisher relate to their implementation of the Collegial Review Process in a cost-saving manner. And, Snead subsequently brought a lawsuit in April 2013 alleging medical negligence in Ohio's Court of Claims. (Am. Compl. Case No. 2013-00022 at 5; ECF No. 112-10.) He points to no action taken by the defendants between April 2013 and June 2013, when the Amended Complaint here was filed. Snead has thus waived of "*any* cause of action, based on the same act or omission," Ohio Rev. Code § 2743.02(A)(1) (emphasis added), and cannot now repeat his allegations that the CRB violated his rights by taking costs into account when providing him medical care. Thus, Ohio Rev. Code § 2743.02(A)(1) bars Snead from bringing suit against Drs. Weil, Eddy, and Krisher for money damages in their personal capacity.

Last, the defendants ask the Court to review Snead's request for injunctive relief against them in their official capacities because the above analysis does not foreclose prospective injunctive or equitable relief. *See Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 459

(6th Cir. 1998) ("[W]here a federal court plaintiff files a related action in the Court of Claims, she has waived her right to sue the state officials for monetary damages in federal court, but she has not waived her claims for prospective equitable relief."). Generally, the Eleventh Amendment "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments." *Thiokol Corp. v. Mich. Dep't of Treasury,* 987 F.2d 376, 381 (6th Cir. 1993). An exception set forth in *Ex Parte Young*, 209 US. 123 (1908), allows for "actions against state officials sued in their official capacity for prospective injunctive or declaratory relief." *Id.*

The Magistrate Judge did not weigh in on this issue, as he directed Snead to respond only to the defendants' *Leaman* arguments. (Order at 1; ECF No. 130.) Snead's response, however, argued that he was entitled to *Ex Parte Young* relief notwithstanding the resolution of the *Leaman* issue. (Resp. to Summ. J. at 3-4; ECF No. 134.) Now, the defendants ask the Court to weigh in, and Snead offers no objection to this request. Because the parties adequately briefed the issue before the Magistrate Judge, the Court will analyze the claim.

The Court previously summarized the injunctive relief sought by Snead as:

1. An MRI of his left hip and that after such MRI is performed, a subsequent consultation with an orthopedic surgeon, and that any all recommendations made by the orthopedic surgeon be complied with in a timely manner and without interference by the CRB, ODRC, or any individually named defendant or their agents.
2. An MRI of his right knee and that thereafter, a consultation ordered with an orthopedic surgeon to consider his right knee as well as his left hip as above.
3. An MRI of his left inguinal hernia site to determine whether nerve compression has occurred and thereafter that he be evaluated by a surgeon.
4. An MRI of the area "containing the Sciatic nerve" to determine if nerve compression has occurred, and should a reading of the MRI dictate, that he be scheduled to consult with a surgeon capable of performing the appropriate laser surgery to correct any compression.
5. If laser surgery is indicated, then the damages in plaintiff's upper spine be corrected at the same time.
6. That plaintiff be secured with a seat belt during any transportation to or from medical care appointments.

7. That plaintiff be provided with the following medications, to include and not be limited to: a proton pump inhibitor, a shingles vaccine, a muscle relaxant, comprehensive pain management until and after surgical corrections, and nasally inhaled corti-steroids.
8. That bullets from plaintiff's back and chest be removed, and bullet fragments from his arm be removed, followed by an order than any orders or recommendations from the surgeon be followed.
9. That all recommendations from any neutral medical expert who may be appointed by followed.
10. That defendants be prohibited from denying him any future medical care, any unsecured transportation, or future retaliation for exercise of his First Amendment rights.

(Aug. 6, 2014 Opn. & Order at 3-4; ECF No. 123.)

"In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Dubuc v. Michigan Bd. of Law Examiners*, 342 F.3d 610, 616 (6th Cir. 2003) (citations omitted). *Ex Parte Young* does not extend to retroactive relief. *Quern v. Jordan*, 440 U.S. 332, 338 (1979). If a complaint against a state official is "based entirely on past acts and not continuing conduct that, if stopped, would provide a remedy to them, . . . it . . . does not come under the doctrine of *Ex parte Young*." *Gean v. Hattaway,* 330 F.3d 758, 776 (6th Cir.2003). The Court must examine Snead's claims substantively rather than by the form in which they appear. *See Hendricks v. Kasich*, No. 2:12-CV-729, 2013 WL 2243873, at *8 (S.D. Ohio May 21, 2013).

Snead maintains that because he seeks "the future provision of medical care[,] [t]his can only be deemed to be pro[s]pective relief" for ongoing violations that qualify under *Ex Parte Young*. (Resp. to Mot. Summ. J. at 4.) The Court disagrees. "[I]njunctive relief, even prospective injunctive relief, against state officers named in their official capacities 'should not be granted if the relief is tantamount to an award for past violation of federal law, even though styled as something else.'" *Boysen v. Holbrook*, No. 06-CV-150, 2007 WL 852198, at *4 (S.D.

15

Ohio March 19, 2007) (quoting *Barton v. Summers*, 293 F.3d 944, 949 (6th Cir.2001)). Although Snead categorizes this relief as "prospective," it is compensatory in nature as it seeks to address past alleged violations. The substance of Snead's claims relate to the denial of medical care in the past. For him to prevail, the Court would need to conclude that one of the defendants previously violated Snead's Eighth Amendment rights. Thus, Snead "is seeking relief 'for a past, one-time decision of the [defendants] that purportedly violated [his] federal constitutional rights.'" *Hendricks v. Kasich*, No. 2:12-CV-729, 2013 WL 2243873, at *9 (S.D. Ohio May 21, 2013) (quoting *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 509 (6th Cir. 2008)). Snead therefore cannot claim relief under *Ex Parte Young*. *See id.* at *8 (holding *Ex Parte Young* did not apply where plaintiff alleged cost-cutting measures detrimentally impacted inmates' medical care).

## VI. CONCLUSION

For the reasons stated above, the Court **DENIES** Snead's Motion for Reconsideration (ECF NO. 94), **OVERRULES** Snead's Objections (ECF No. 129), **ADOPTS** the Magistrate Judge's March 11, 2014 Order (ECF No. 91) and October 7, 2014 Report and Recommendation (ECF No. 127), and **GRANTS** Defendants' Motion for Judgment on the Pleadings (ECF No. 101). Also, the Court **SUSTAINS** Defendants' Objections (ECF No. 144), **OVERRULES** the Magistrate Judge's January 13, 2015 Report and Recommendation (ECF No. 142), and **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 112).

**IT IS SO ORDERED.**

3-16-2015
DATE

EDMUND A. SARGUS, JR.
CHIEF UNITED STATES DISTRICT JUDGE